**STATE of Tennessee, Appellee,**

v.

**James David JACKSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

May 24, 1985.

Permission to Appeal Denied by Supreme Court Aug. 12, 1985.

Daniel P. Street, Burkett C. McInturff, Kingsport, for appellant.

W.J. Michael Cody, Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, H. Greeley Wells, Stanley A. Kweller, Asst. Dist. Attys. Gen., Blountville, for appellee.

## OPINION

TATUM, Judge.

A Sullivan County Grand Jury indicted the defendant for petit larceny of a pistol from Dewey McCloud, aggravated assault of Dewey McCloud, aggravated assault of Wayne Anderson, aggravated assault of Darrell Hopkins, aggravated kidnapping of David Akers, and armed robbery of David Akers. The defendant was convicted of all offenses as charged in the indictment except for the counts of aggravated assault upon Anderson and Hopkins. In these two cases, the defendant was found guilty of an attempt to commit aggravated assault. Punishment was fixed at 4 years imprisonment for petit larceny, 7 years imprisonment for aggravated assault upon Dewey McCloud, 4 years imprisonment on each of the convictions for an attempt to commit an aggravated assault, and a life imprisonment for kidnapping. The punishment on the armed robbery conviction was enhanced to life imprisonment because the defendant was found to be a habitual criminal. The trial court found the defendant to be a persistent offender with respect to each offense and each offense was found to be an especially aggravated offense. All sentences were ordered to run concurrently.

For the reasons hereinafter stated, we reverse and dismiss the two convictions for attempt to commit aggravated assault. All of the other judgments are modified and affirmed.

Except for the two convictions for attempt to commit aggravated assault, we consider the issues attacking the sufficiency of the evidence. It will be apparent in our discussion of the next issue why we do not consider whether the evidence is sufficient to support the two convictions for attempt to commit aggravated assault. The facts established by the accredited evidence are that the defendant and Ricky Boggs awakened Mr. and Mrs. Dewey McCloud at their home in Kingsport at approximately 2:00 or 2:30 on the morning of December 17, 1982. Mr. McCloud took his pistol with him when he answered the front door at that hour. After recognizing the defendant and Boggs, Mr. McCloud invited them into the house as he was personally acquainted with them.

The defendant told Mr. McCloud, a minister, that his wife had been injured and that his baby might have been killed in an automobile accident. Mr. McCloud began to pray for the defendant when the defendant shoved him to the floor. He took Mr. McCloud's pistol from his pocket and struck Mr. McCloud in the head with it until he became unconscious. The defendant took the pistol with him when he left. Mr. McCloud had large gashes on his head that bled profusely.

Policewoman Debra Givens arrived at the McCloud home shortly after 2:30 A.M. After talking with Mr. and Mrs. McCloud, she caused an alert to be announced on the police radio for the defendant and Boggs in an older model dark-colored van.

About 3:25 A.M., Sergeant Wayne Anderson observed the van. He followed it to 606 Riverside Drive where the van pulled into a driveway. Sergeant Anderson saw the defendant get out of the van and go behind the house at that address. Officer Givens arrived at the address and arrested Boggs, who remained in the van. Officer Anderson and fellow officers Hopkins and Smith, who had arrived upon the scene, went around the house looking for the defendant. They saw three flashes and heard three gunshots which came from behind the house where the defendant had gone. Officer Hopkins heard a "thud" close by him when the shots were fired.

The officers took cover and were unable to apprehend the defendant at this time.

Between approximately 3:30 and 4:00 A.M., the defendant entered Chuck's Drive-In in Kingsport. The waitress and cook, Lisa Bradshaw, knew the defendant by sight. Miss Bradshaw spoke to the defendant concerning a previous party at which she and defendant were to meet, saying, "I ought to shoot you for standing me up." In response, defendant raised his coat, displaying a "white-handled gun" which was stuck in his pants, and replied, "Yeah, you'd shoot me?". At this time, there was a man at the drive-in window waiting for hamburgers. The defendant pointed to the man and said, "There's my brother at the drive-in window." He immediately went out the door.

Mr. David Akers was the man at the drive-in window in his automobile. The defendant came out of the eating establishment, jerked Mr. Akers' car door open and got in on the passenger's side. He pointed a pistol at Mr. Akers and ordered him to drive the car, which Mr. Akers proceeded to do. He demanded Mr. Akers' gun but Mr. Akers had no gun. The defendant then took all of Mr. Akers' money from his billfold, which was approximately $30.00, and put it in his own pocket. He again pointed the pistol at Mr. Akers' head and ordered Mr. Akers to take him to a milling company where he got out of the car and left on foot.

When the defendant was arrested at approximately 2:30 P.M. that same day, he had Mr. McCloud's pistol with him. Mr. McCloud had dropped about 5 cartridges in the revolver. When the defendant was arrested, three of the cartridges had been shot and two had not.

The defendant did not testify but offered several witnesses on his behalf. Ricky Boggs testified that he and the defendant went to Mr. McCloud's house to talk with him about the matter of a sexual affair that Boggs heard took place between McCloud and his mother "years ago." Boggs testified that when the defendant asked McCloud about the matter, McCloud became angry and reached for the pistol. He and the defendant "wrestled" McCloud down and took the pistol. Boggs indicated that McCloud might have hit his head on a coffee table when he fell to the floor but he denied that they hit McCloud with the pistol.

Boggs testified that after leaving the McCloud home, he and the defendant went to a girl's apartment where they had been drinking earlier that night. Boggs testified that on the way to the girl's apartment, the defendant fired McCloud's pistol 3 times into the floorboard of the van in an attempt to "unjam it." After staying at the apartment a short time with the defendant, Boggs left in his van with an unknown man and pulled in behind 606 Riverside because the police were signaling for him to stop. According to Boggs' testimony, the man who left the van and ran behind the house was not the defendant but the unknown individual who was picked up outside the girl's apartment. Boggs testified that the defendant remained at the girl's apartment when he left. He admitted that his trial testimony was inconsistent in many material respects to a statement he had given to police officers after his arrest. He said that he was still intoxicated when he gave the statement and that both he and the defendant were intoxicated when they decided to visit with Reverend McCloud. In the statement to the police, he said that the defendant was the man who fled from the van at 606 Riverside.

Barbara Akers, another defense witness, testified that the defendant and Boggs visited her apartment earlier on the evening of December 16. The three of them drank almost two quarts of liquor. Boggs and the defendant left at approximately 12:30 A.M. on December 17 and returned about an hour or an hour and a half later. She testified that they were arguing about the defendant shooting holes in Boggs' van. They left her apartment separately.

Linda Frazier testified that she was acquainted with the defendant and lived next door to the milling company where the kidnapper left Akers' car. She saw the car

pull into the parking lot and saw the car leave. She saw a man leave the car while it was stopped but the man was not the defendant. She knew the defendant well and he had previously worked for her.

There were several rebuttal witnesses who contradicted much of the testimony given by the defense witnesses.

In arguing his issues attacking the sufficiency of the evidence, the defendant merely alludes to the testimony of defense witnesses. We cannot decide these issues by considering only the witnesses of the defendant. On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). A jury verdict of guilty, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State's theory. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). The defendant was positively identified by witnesses as the perpetrator of these crimes. The evidence of his guilt is overwhelming; it is more than sufficient to convince a rational jury of the defendant's guilt of each offense beyond a reasonable doubt. We must therefore overrule these issues. Rule 13(e), T.R.A.P.; *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979).

In the next issue, the defendant says that the two convictions for *attempting* to commit aggravated assault cannot stand. The State does not brief this issue but merely points out that it was not contained in the motion for a new trial. Although the issue was not included in the motion for a new trial, we elect to consider it pursuant to Rule 52(b), T.R.Cr.P. Count C–1 of the indictment charges:

"COUNT C–1

The Grand Jurors for the State and County aforesaid, upon their oath present and say that JAMES DAVID JACKSON on or about December 17, 1982 in the State and County aforesaid did unlawfully and feloniously, attempt to cause serious bodily injury to one Wayne Anderson, willfully, knowingly, or recklessly, under circumstances manifesting extreme indifference to the value of human life, in that the said JAMES DAVID JACKSON did fire three shots from a firearm toward the said Wayne Anderson, contrary to the laws of the State of Tennessee, and...."

Count D–1 is in the same language as Count C–1 except that the name of Darrell Hopkins appears in Count D–1 where the name of Wayne Anderson appears in Count C–1.

These two counts charge the defendant with aggravated assault as that term is defined in T.C.A. § 39–2–101(b)(1), (2), which provides as follows:

"39–2–101. Aggravated assault.—

(b) Any person who:

(1) Attempts to cause or causes serious bodily injury to another willfully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(2) Attempts to cause or willfully or knowingly causes bodily injury to another with a deadly weapon; ... is guilty of the offense of aggravated assault ..."

With respect to Counts C–1 and D–1, the defendant was convicted of *attempts* to commit the felony of aggravated assault. T.C.A. § 39–1–501 provides:

"39–1–501. Attempt to commit felony.— If any person attempts to commit any felony or crime punishable by imprisonment in the penitentiary, where the punishment is not otherwise prescribed, he shall, on conviction, be punished by imprisonment in the penitentiary not exceeding five (5) years, or, in the discretion of the jury, by imprisonment in the county workhouse or jail not more than one year, and by fine not exceeding five thousand dollars ($5,000). (citations omitted)."

An attempt to commit a felony requires three elements: (1) an intent to commit a specific crime; (2) an overt act; and, (3) failure to consummate the crime. *Ger-*

*vin v. State,* 212 Tenn. 653, 371 S.W.2d 449 (1963); *Bandy v. State,* 575 S.W.2d 278 (Tenn.1979).

■ When we study the above-quoted authorities in conjunction with T.C.A. § 39–2–101(b)(1) and (2), we find that there can be no crime of an attempt to violate T.C.A. § 39–2–101(b)(1) and (2). Both (1) and (2) make it a completed offense to *attempt* to cause or cause serious bodily injury or bodily injury in the manners specified by the statute. In effect, under these two counts, the defendant was convicted of attempting to attempt to cause bodily injury, etc. As above stated, one of the elements of an attempt is the failure to consummate the crime. Under Sections (b)(1) and (2), the crime is consummated and completed by the attempt.

We concur with the language of the Supreme Court of Colorado in *Allen v. People,* 175 Colo. 113, 485 P.2d 886, 888 (1971):

"As above defined, the commission of a criminal attempt under our statutes requires the intent to commit a specific crime. Attempting an assault would require a person to *intend* to '*attempt* * * with present ability to commit a violent injury on the person of another.' Perhaps philosophers or metaphysicians can intend to attempt to act, but ordinary people intend to act, not to attempt to act. As stated by one court, nearly one-hundred years ago, '(T)he refinement and metaphysical acumen that can see a tangible idea in the words "an attempt to attempt 'to act' is too great for practical use. It is like conceiving of the beginning of eternity or the starting point of infinity."' *Wilson v. State,* 53 Ga. 205; *see generally,* Annot. 79 A.L.R.2d 597 (1961); Beale, Criminal Attempts, 16 Harv.L.Rev. 491 (1902). In *State v. Davis,* 108 N.H. 158, 229 A.2d 842, it is succinctly stated that:

'As to crimes of this sort it is true as argued by defendant that "there can be no crime of an attempt to commit an attempt." ' "

Also see *People v. Gordon,* 178 Colo. 406, 498 P.2d 341 (1972); *In re M,* 9 Cal.3d 517, 108 Cal.Rptr. 89, 510 P.2d 33 (1973); *People v. Banks,* 51 Mich.App. 685, 216 N.W.2d 461 (1974).

■ Our above-quoted attempt statute (T.C.A. § 39–1–501) makes it a felony to attempt to commit any felony or crime punishable by imprisonment. However, for the reasons above discussed, there generally can be no attempt at a crime which is itself in the nature of an attempt. Therefore, we must reverse and dismiss the two convictions for attempt to commit aggravated assault.

■ In the next issue, the defendant complains the trial judge erred when he refused to permit defendant to ask Mr. McCloud on cross examination whether he had had sexual relations with Ricky Boggs' mother. The defendant says that he was entitled to question Mr. McCloud on this subject for impeachment purposes. The answer to this question could not be probative of truthfulness or untruthfulness of Mr. McCloud as a witness and the trial judge properly sustained the State's objection to this line of questioning. See *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976) wherein the Supreme Court adopted Rule 608(b), Federal Rules of Evidence.

■ In the next issue, the defendant states that the trial court erred in finding that the offenses committed by him were "especially aggravated offenses" as that term is defined in T.C.A. § 40–35–107. The trial judge based his finding on the fact that the defendant was on parole when he committed the offenses for which he was convicted. (See T.C.A. § 40–35–107(3)(B)). The defendant cites T.C.A. § 40–35–107(6)(A) which formerly provided that the provisions of T.C.A. § 40–35–107 do not apply to sentencing for an offense "if the provisions of the crime charged in the indictment provide for some form of enhancement for the commission of that offense in an aggravated manner." This section was modified by an amendment effective May 23, 1983, apparently to correct the broad language of the original proviso. Thus, the statute applicable to this defendant pre-

vented the use of aggravating factors to enhance sentences when the indictments charge crimes providing for enhanced punishment because of their commission in an aggravated manner. This applied even when the further enhancement was based on a factor not charged in the indictment, as in this case.

The trial judge also found that the defendant was a "persistent offender" as that term is defined by T.C.A. § 40–35–106. The defendant does not attack this finding of the trial judge. T.C.A. § 40–35–109(c) requires the trial court to sentence a defendant within Range II if he is a "persistent offender and/or he is convicted of an especially aggravated offense." We therefore, find that the trial court's judgment that the defendant is an especially aggravated offender is erroneous and must be modified to reflect that the defendant is a persistent Range II offender, but not an aggravated offender.

In the next issue, the defendant says that his convictions for both aggravated kidnapping and armed robbery cannot stand. The defendant argues that the aggravation of the kidnapping was the felony of armed robbery which was committed upon the victim Akers during his unlawful confinement or detention. The same pistol was used to accomplish the kidnapping that was used to accomplish the armed robbery.

The State did not brief this issue on its merits, but stated only that the issue was waived because not assigned in the motion for a new trial. If the defendant's contention is correct, then this is error which has affected the substantial rights of the defendant. We elect to consider it. See Rule 52(b), T.R.Cr.P.

■ In charging the jury, the trial judge defined the offense of aggravated kidnapping as follows:

"Any person who commits an aggravated kidnapping is guilty of a felony.

Aggravated kidnapping is commited (sic) when any person:

(1) unlawfully seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away another; and

(2) does so with the felonious intent to

(a) cause the other to be confined secretly against his will; or

(b) detains the other against his will; or

(c) sends the other out of the state against his will; and

(3) the confinement, detention or carrying out of the state is accomplished while Defendant is armed with a deadly weapon, or the Defendant commits a felony upon the person of the victim who is secretly confined, unlawfully detained or sent out of the state."

This instruction was accurate. T.C.A. § 39–2–301. When one is detained against his will or confined secretly against his will, an aggravated kidnapping has occurred if, among other things, a felony is committed on the person being detained or confined or if the defendant is armed with a deadly weapon when the confinement or detention is accomplished. T.C.A. § 39–2–301(a)(2), (C), (D). Both of these conditions occurred when Mr. Akers was kidnapped. In this case, the kidnapping was accomplished by use of a pistol which would place the offense in the status of an aggravated kidnapping even if the armed robbery had not been committed.

Committing another felony upon the victim while confined will also place the offense in the aggravated kidnapping status. In *Brown v. State*, 574 S.W.2d 57 (Tenn. Crim.App.1978), this court stated:

"If the facts on which the kidnapping charge is based are an integral part or essential element of the other felony being committed, then a separate conviction for the two offenses cannot be had. *People v. Adams*, 34 Mich.App. 546, 192 N.W.2d 19 (1971). If the facts of the kidnapping are separate and apart from the other felony and are not an integral part or essential element of the other felony, then two convictions may be had. *Cherry v. State*, 539 S.W.2d 51 (Tenn.Cr.

App.1976); *Jackson v. State,* 540 S.W.2d 275 (Tenn.Cr.App.1976)."

In the case at bar, the aggravated kidnapping was completely accomplished by use of a pistol before the armed robbery occurred. The robbery was not an integral part of the kidnapping. It was not necessary to prove the elements of armed robbery in order to prove the aggravated kidnapping, nor was it necessary to prove the elements of aggravated kidnapping in order to prove the armed robbery. The fact that the same pistol was used to commit both the kidnapping and the armed robbery is of no legal significance. *State v. Mackey,* 638 S.W.2d 830 (Tenn.Crim.App.1982). We hold that the convictions for aggravated kidnapping and armed robbery were for separate and distinct offenses and that both may stand.

The defendant states next that his conviction as a habitual criminal violated the constitutional provision against cruel and unusual punishment and due process. In support of this argument, he cites *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In that case, the United States Supreme Court held that a South Dakota Habitual Criminal Statute was unconstitutionally applied. The *Solem* case is not applicable under the Tennessee Habitual Criminal Statute for the reasons stated in *State v. Freeman,* 669 S.W.2d 688, 693 (Tenn.Crim.App.1983).

The defendant also states that the District Attorney is constitutionally required to establish specific criteria for determining which cases will be prosecuted under the Habitual Criminal Statute. He states that the actions of the District Attorney "wherein he randomly submits individuals for prosecution as an habitual criminal can only be characterized as arbitrary and capricious." There is no showing that individuals for prosecution as habitual criminals are "randomly" selected. The fact that the statute allows prosecutorial selectivity in its applications creates no constitutional infringement. See *Janow v. State,* 567 S.W.2d 483 (Tenn.Crim.App.1978) and the cases therein cited. We have con-

sidered the other constitutional attacks upon the defendant's conviction as a habitual criminal and find them to be without merit.

Finally, the defendant states that the trial court erred in permitting the State to prove prior inconsistent statements of defense witnesses Ricky Boggs and Linda Frazier. No contemporaneous objection was made to the evidence complained of; therefore, any error was waived. *State v. Todd,* 631 S.W.2d 464 (Tenn.Crim.App. 1981); *Mullins v. State,* 571 S.W.2d 852 (Tenn.Crim.App.1978). Further, these matters were not contained in the motion for a new trial. This, too, constituted a waiver because the matters were not plain or fundamental error. *State v. Givhan,* 616 S.W.2d 612 (Tenn.Crim.App.1980).

The judgments for the two convictions for attempt to commit aggravated assault are reversed and dismissed. The remaining judgments are affirmed as modified to show that the defendant is a persistent offender but not an aggravated offender (Range II), with release eligibility as provided in T.C.A. § 40–35–501.

BYERS, J., and RICHARD R. FORD, Special Judge, concur.