**STATE of Tennessee, Appellee,**

v.

**Ray Vernon FORD, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

July 1, 1992.

Charles W. Burson, Atty. Gen. and Reporter, Joel W. Perry, Asst. Atty. Gen., Nashville, Robert "Gus" Redford, Dist. Atty. Gen., Huntingdon, John W. Overton, Asst. Dist. Atty. Gen., Savannah, for appellee.

Mike Mosier, Henderson (Appeal Only), W. Lee Lackey, Savannah (Trial Only), for appellant.

## OPINION

JONES, Judge.

The appellant, Ray Vernon Ford,[1] was convicted of aggravated rape, a Class A felony, by a jury of his peers. The trial court found that the appellant was a standard offender and imposed a Range I sentence of seventeen (17) years in the Department of Correction.

The judgment of the trial court is reversed and this cause is remanded to the trial court for a new trial for the reasons set forth in this opinion.

### I.

On the afternoon of September 22, 1990, the victim, B.H.,[2] who was under the age of thirteen years, went to the farm of the appellant with his father and brother-in-law. While the victim's father and brother-in-law were overhauling a three wheeler, B.H. went with the appellant to unload hog feed at a nearby barn. He also accompanied the appellant to another barn; and the victim watched while the appellant counted his cows.

While enroute to the curtilage, the appellant stopped near a pond. As he opened the passenger side of the truck, he told the victim to remove his pants. When the victim refused, the appellant unbuttoned the victim's jeans, pulled the jeans and the victim's underwear to his knees and fondled the victim's reproductive organ with his hand. The appellant then performed fellatio upon the victim. When the appellant completed the act, he told the victim that if he told anyone, "they would put [the victim] in jail."

A doctor examined the victim on September 24, 1990. The examination revealed a bruise on the end of the victim's reproductive organ. According to the doctor, the bruise was "consistent with oral sexual contact." However, the doctor admitted that the bruise could have been caused by a myriad of other occurrences.

The appellant denied that he sexually abused the victim. The appellant's brother, who had been squirrel hunting in a nearby stand of trees, stated that the appellant nev-

1. The indictment was amended to charge that "Ray Vernon Ford" committed the offense after the appellant testified that was his name. The policy of this Court is to include the name appearing in the indictment in the style of the case.

2. When a minor is the victim of sexual abuse, it is the policy of this Court to refer to the victim by his or her initials.

er went to the passenger side of the truck. The appellant's wife testified that she was with the victim several times after the fellatio occurred, and the victim seemed normal. He continued to help the appellant in a shed adjacent to the area where the victim's father and brother-in-law were working.

## II.

The assistant district attorney general concluded his cross-examination of the appellant by asking the following question: "And everybody was just as happy as they could be, and everything was just as fine as it could be—because you wouldn't do anything to sexually abuse a child, would you?" The appellant answered: "No, I never have."

When defense counsel advised the trial court that the testimony of the appellant concluded the defense proof, the trial court called a bench conference to discuss the instructions that were going to be included in the charge. During the conference, the assistant district attorney general advised the trial court and defense counsel:

> Your Honor, the last thing that the witness said was, before he got off the stand,—"I never have," with regard to abusing a child,—and I have another child,—a relative of his,—a niece,—who I would expect to say that on two occasions,—one of which he exposed himself to her, and wanted her to expose herself to him,—and another one,—I think this was physical contact.

In response to an inquiry by the trial court, the assistant district attorney general stated that he sought to introduce the evidence to impeach the answer the appellant gave to his last question. Defense counsel objected to the introduction of the evidence.

K.D.F., thirteen years of age, is the appellant's niece. During the jury-out hearing, she testified that "about seven years ago" she was with the appellant in one of his barns. According to the witness, the appellant asked her to remove her clothing. She refused to remove her clothing. The appellant then removed his clothing and exposed himself to her. When she again refused to remove her clothing, the appellant took her home. She further testified that "about a year or so before that" the appellant rubbed the vaginal area of her body while they rode on a tractor.

The trial court ruled that the evidence was admissible for the purpose of impeaching the response given by the appellant to the last question asked by the assistant district attorney general. The witness then repeated her testimony in the presence of the jury.

The appellant presented evidence in surrebuttal. Witnesses testified that they overheard K.D.F. state "she came to see Vernon Ford burn" earlier that day. The appellant's wife related that she confronted K.D.F. when there was talk in the family about the accusation, and K.D.F. told her "Josephine [the victim's mother] told her to tell it." The relationship between Josephine Ford and other members of the Ford family had been strained for several years. The appellant took the stand and categorically denied the testimony of K.D.F.

## III.

### A.

Evidence of "specific instances of conduct," sometimes referred to as "prior bad acts," is admissible to impeach an accused in a criminal prosecution. Tenn.R.Evid. 608(b). However, before such evidence is admissible, certain requirements must be satisfied. Tenn. R.Evid. 608(b)(3). These requirements are:

1.) The State of Tennessee "must give the accused reasonable written notice of the impeaching conduct before trial," Tenn.R.Evid. 608(b)(3);

2.) The specific instances of conduct must have occurred within ten years of the commencement of the prosecution against the accused subject to the exception set forth in the rule, Tenn.R.Evid. 608(b)(2);

3.) The trial court upon request is required to conduct a jury-out hearing to determine whether (a) a reasonable factual basis exists for the inquiry and (b) the alleged conduct is probative of truthfulness, Tenn. R.Evid. 608(b)(1); and

4.) The trial court must find that the probative value of the specific instance of conduct on the issue of credibility outweighs its

unfair prejudicial effect on the substantive issues. Tenn.R.Evid. 608(b)(1) and (3). *See* N. Cohen, D. Paine and S. Sheppeard, *Tennessee Law of Evidence,* § 608.1, *et seq.* (2nd ed. 1990).

The trial court may, within the exercise of its discretion, rule upon the admissibility of specific instances of conduct prior to trial. Tenn.R.Evid. 608(b)(3). *See State v. Martin,* 642 S.W.2d 720, 724 (Tenn.1982). However, the trial court is required by Rule 608(b)(3) to rule upon the admissibility of such evidence before the accused takes the witness stand.

### B.

■ The trial court committed error of prejudicial dimensions in permitting the State of Tennessee to introduce the testimony of K.D.F. Both the trial court and the State of Tennessee failed to satisfy the prerequisites for the introduction of specific instances of conduct.

First, the assistant district attorney general did not give written notice of his intent to use specific instances of conduct involving K.D.F. Tenn.R.Evid. 608(b)(3). As previously stated, the assistant district attorney general did not mention his intention to introduce these specific instances of conduct until the bench conference that was called by the trial court after the appellant rested his case-in-chief.

The notice provision prevents trial by ambush. The notice provides defense counsel with the specific instances of conduct the State intends to use; and counsel is given the opportunity to investigate the allegations prior to trial. If the evidence is unfounded, defense counsel can marshal the evidence to rebut or disprove the alleged conduct; and, accordingly, prepare to support his client's position when the issue is raised during the trial.

The record is silent as to why the assistant district attorney general did not provide the appellant or his counsel with written notice of his intent to use the specific instances of conduct in question. It is obvious that the assistant district attorney general was aware of these acts prior to trial. He alluded to a written statement taken from K.D.F. Also, there is evidence that K.D.F. made the statement that "she came to see Vernon Ford burn" as early as voir dire examination.

Second, the jury-out hearing to determine the admissibility of the specific instances of conduct occurred after the appellant had testified and rested his defense. The applicable rule provides: "The court may rule on the admissibility of such proof prior to the trial but in any event *shall rule prior to the testimony of the accused.*" (Emphasis added). Tenn.R.Evid. 608(b)(3). Consequently, the jury-out hearing came too late.

This rule is designed to permit the accused to make an informed decision as to whether he should testify in support of his defense. If the evidence cannot be used to impeach the accused, he may opt to testify in support of his defense. Conversely, if the trial court rules that the specific instances of conduct can be used to impeach the accused, he may decide not to testify in support of his defense. His failure to testify will not bar his right to raise this issue on appeal. Tenn. R.Evid. 608(b)(3). In this case, the appellant was denied the right to make an informed decision as to whether he should testify in support of his defense.

Third, the trial court did not determine whether the specific instances of conduct related by K.D.F. were probative of truthfulness or untruthfulness. *See* Tenn.R.Evid. 608(b). Nor did the trial court determine whether the specific instances of conduct, if probative of truthfulness, outweighed their unfair prejudicial effect on the substantive issues. Tenn.R.Evid. 608(b)(3). The trial court simply ruled that the specific instances of misconduct could be used to impeach the appellant.

■ Specific instances of sexual conduct are not probative of truthfulness or untruthfulness. *State v. Jackson,* 697 S.W.2d 366, 371 (Tenn.Crim.App.1985); *Shockley v. State,* 585 S.W.2d 645, 652–653 (Tenn.Crim.App. 1978). The Advisory Commission Comment to Rule 608 states: "To the extent that *State v. Caruthers,* 676 S.W.2d 935 (Tenn.1984), can be construed as allowing cross-examination about a prior act of rape to impeach, the

proposal [rule] would change that result." *See also Tennessee Law of Evidence,* § 608.6, at pp. 267–268.

In *State v. Jackson, supra,* defense counsel attempted to cross-examine the victim as to "whether he had sexual relations with Ricky Boggs' mother." The trial court sustained the State's objection to this line of questioning. Defense counsel argued that he was entitled to elicit this information for impeachment purposes. In affirming the trial court, this Court said: "The answer to this question could not be probative of truthfulness or untruthfulness of Mr. McCloud as a witness and the trial judge properly sustained the State's objection to this line of questioning." 697 S.W.2d at 371. While *Jackson* was decided before the enactment of the Tennessee Rules of Evidence, the ruling of this Court is applicable to the instant case.

Fourth, the assistant district attorney general was bound by the appellant's answer to his question. Tenn.R.Evid. 608. *See Shockley v. State,* 585 S.W.2d at 652–653. Rule 608 provides: "Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crime as provided in Rule 609, *may not be proved by extrinsic evidence.*" (Emphasis added). The admission of K.D.F.'s testimony clearly violated this provision of Rule 608. *See Shockley v. State, supra.*

### IV.

The State concedes that it was error to introduce this evidence, but concludes that the error was harmless. However, the State does not explain in its brief why it deems the error to be harmless given the highly inflammatory nature of the specific instances of conduct.

The incriminating evidence came from the victim and the physician who examined the victim a few days after the alleged fellatio. As previously stated, the doctor testified that the bruise on the victim's reproductive organ may have resulted from a number of causes. The appellant denied that he engaged in fellatio with the victim. The appellant's brother, who was hunting in the area, testified that the appellant never went to the passenger side of the truck as the victim stated. The appellant's wife stated that she saw the victim after the alleged act of fellatio had occurred; and the victim acted normal. The victim continued to help the appellant notwithstanding the fact his father and brother-in-law were nearby. In short, the evidence of the appellant's guilt was far from overwhelming.

The trial court did not give a limiting instruction to the jury after K.D.F. testified or as part of the charge given to the jury. *See State v. Reece,* 637 S.W.2d 858, 861 (Tenn.1982); *Martin v. State,* 584 S.W.2d 830, 833 (Tenn.Crim.App.1979). Thus, the jurors could have reasonably concluded albeit erroneously that if the appellant had previously sexually abused K.D.F., he probably sexually abused the victim in this case. In other words, the jurors could have concluded that the appellant had the propensity to sexually abuse children. Of course, such evidence cannot be introduced for this purpose.

This Court concludes that the appellant is entitled to a new trial due to this error. Considering the entire record, this error more probably than not affected the judgment. Tenn.R.App.P. 36(b). *See State v. Reece, supra.*

DWYER and WADE, JJ., concur.