# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
January 25, 2005 Session

## STATE OF TENNESSEE v. WILLIAM HARLON ADAMS

### Direct Appeal from the Circuit Court for Coffee County
### No. 30,830     L. Craig Johnson, Judge

### No. M2003-02952-CCA-R3-CD - Filed June 8, 2005

The appellant, William Harlon Adams, appeals his convictions for vandalism of less than five hundred dollars ($500) and criminal attempt to commit resisting arrest. The following issues are presented for our review: (1) whether the trial court erred in denying the motion to suppress; (2) whether the trial court erred in instructing the jury on the offense of attempt to resist arrest; (3) whether the trial court erred in denying the motion to dismiss; (4) whether the evidence was sufficient to support the conviction for vandalism; and (5) whether the trial court correctly sentenced the appellant. After a thorough review, we determine that attempt to resist arrest is not a crime, thus, we reverse the appellant's conviction and remand the case for any further proceedings which may be necessary. We affirm the remainder of the judgment of the trial court, including the conviction for vandalism.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed in Part, Reversed in Part and Remanded.

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, and ROBERT W. WEDEMEYER, JJ., joined.

Russ Eagle, Murfreesboro, Tennessee, for the appellant, William Harlon Adams.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Mickey Layne, District Attorney General; and Jason Ponder, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

On August 10, 2000, at approximately 3:30 a.m., Sergeant Ray Higginbotham of the Tullahoma Police Department responded to a domestic violence call on White Oak Street in Tullahoma. Upon his arrival, Officer Higginbotham observed Marcia Chastain, the appellant's live-in ex-wife, standing in the yard holding a telephone. She was crying and appeared to be upset. Ms. Chastain claimed that the appellant was "tearing up the house" and that he had "been out drinking all night." Officer Higginbotham "could hear a gentleman's voice inside the residence speaking very loudly, yelling, cursing." He could also hear objects breaking and hitting the walls.

After speaking with Ms. Chastain, Officer Higginbotham approached the front door of the residence. About the time he walked on to the porch, Officer Tim Brandon arrived on the scene. Kevin Chastain, Ms. Chastain's son, exited the house as the officers stepped onto the porch. Officer Brandon knew Mr. Chastain and spoke with him briefly. The main wooden door of the residence was partially open and the glass storm door was closed. Officer Higginbotham opened the storm door and pushed the main door open further and stood in the doorway where he could see the appellant sitting on the couch. The appellant pointed at Officer Higginbotham and told him to "get the fuck out of [his] house." The appellant had a disorderly appearance, and his demeanor was violent and aggressive.

At that point, the appellant threw an object at Officer Higginbotham, nearly missing his head.[1] Officer Higginbotham told the appellant to "chill out" to which the appellant replied, "You ain't got a warrant." The appellant also used "expletives" and stated that the officers had "no business of being in his house."

Officer Higginbotham told the appellant not to speak to him in that manner and to "try [him]" if he "didn't think [he] would take him to jail." The appellant again told the officers to "get the fuck out" of his house. Officer Higginbotham made the decision to take the appellant into protective custody. He ordered the appellant to stand up and place his hands on the wall. When the appellant did not comply, Officer Higginbotham repeated his request. At that point, both officers removed their chemical spray from their belts in the event that it was necessary to subdue the appellant. The appellant apparently stood up, turned around, and slammed his hands on the wall. Officer Higginbotham was unable to complete a pat-down search of the appellant because the appellant refused to leave his hands on the wall, removing them frequently to interfere with the officer's search of his person. Officer Higginbotham then handed his chemical spray to Officer Brandon, grabbed the appellant's hair and left arm and pulled him to the floor.

---

[1]Officer Higginbotham described the object as round and hard, like a ball. The appellant claims that he threw a wadded up napkin at the officer.

When the appellant was taken to the floor, the officers eventually managed to roll him onto his stomach. The appellant placed his hands underneath his body and repeatedly refused to remove his arms so that they could be placed behind his back in handcuffs. At that point, Officer Brandon pointed his chemical spray toward the appellant's face and Officer Higginbotham told him "no." The officers claim that they did not spray the appellant inside the house.

The officers were eventually able to handcuff the appellant and escort him out of the house. Officer Phil Denson met Officers Higginbotham and Brandon on the front porch and the officers escorted the appellant to Officer Higginbotham's patrol car. The officers placed the appellant in the backseat of the car. Officer Higginbotham opened the back door to communicate with the appellant, and the appellant spat and kicked at him. Officer Higginbotham then sprayed the appellant with chemical spray. The spray did not seem to subdue the appellant, who continued talking. After the appellant was sprayed, Ms. Chastain informed the officers that the appellant had seizures. The engine of the patrol car was running, the front driver's side and rear driver's side windows were cracked, and the air conditioner was on.

Officer Higginbotham continued to speak with Ms. Chastain to ascertain the facts leading up to the 911 call. The appellant began screaming and cursing. Officer Higginbotham heard a loud pop and the sound of breaking glass. When he turned around, he noticed that the appellant had busted out the back window of the patrol car with his feet. Officer Denson reached inside the car and used his chemical spray to gain control of the appellant. The appellant spat at Officer Denson. Officer Denson and Officer Higginbotham then attempted to remove the appellant from the car, as he was complaining that he could not breathe. While removing the appellant from the car, the appellant's foot became stuck in the floorboard. While Officer Denson was attempting to remove the appellant's feet from the floorboard and remove him from the car, the officers dropped the appellant approximately six (6) to eight (8) inches to the ground below. The appellant landed on his side and was rolled over to his stomach. The officers placed the appellant in a "hobble restraint," which prohibited the appellant from moving his arms and legs. An open knife was discovered in the appellant's waistband.

At that point, the appellant was placed in Officer Brandon's patrol car. Ms. Chastain claimed that she did not want to sign a warrant and did not want the appellant to go to jail. The appellant was transported to the jail where he was charged with resisting arrest inside the residence and vandalism for kicking out the car window.

In January of 2001, the Coffee County Grand Jury returned an indictment against the appellant charging him with resisting arrest, vandalism, and assault. The appellant filed a motion to suppress on August 20, 2001, in which he argued that the officers illegally entered his residence. The motion was denied by the trial court.

At trial, the appellant testified that he lived with his ex-wife and her son. He stated that in 1989, he contracted meningitis, which caused him to have a seizure condition and depression. The appellant had brain surgery in 1996 for the seizure condition. He has not had a seizure since the

surgery. At the time of the trial, the appellant was taking blood pressure medication and an antidepressant. At the time of the offense, the appellant had stopped taking his medication.

The appellant claimed that on August 10, 2000, he went out to celebrate his birthday by singing karaoke and drinking beer at the "Finish Line." He claimed that he was "overcome with depression" and drank too much. The appellant continued to drink after he arrived home. He claims that he became agitated and threw a plate of cookies, kicked over a chair in the kitchen and "slung some papers off the coffee table." The appellant testified that he yelled at Mr. Chastain and Ms. Chastain called 911. The appellant claims that he apologized to Mr. Chastain and sat down on the couch.

The appellant admitted that he was "cussing" when the police arrived, but denied that he was throwing anything inside the house. The appellant claimed that both doors to the home were closed when the officers entered the house. He stated that he threw a wadded-up napkin at the officers and told them to get out. He claimed that the officers sprayed him with chemical spray inside the house and that he did not attempt to assault the officer when the officer attempted to restrain him. The appellant did not remember kicking at the officers when he was placed in the car, but remembers being sprayed with "mace" and being locked in the car. He claims that he kicked out the window because he could not breathe and that there were no windows rolled down at the time. The appellant testified that his next memory was being drug out of the car onto the pavement. He stated that he was sprayed again with chemical spray.

Mr. Chastain was called as a rebuttal witness. He stated that the appellant got angry, threw a plate of cookies, and kicked over a chair. His mother, Ms. Chastain, was home sick with bronchitis at the time. Mr. Chastain saw the appellant punch a hole in the dining room wall approximately three (3) feet away from his mother. Mr. Chastain attempted to calm the appellant down prior to the 911 call. When the police arrived, Mr. Chastain remembered the door being cracked open. He saw the officer look inside the house and witnessed the appellant throwing something at the officer. Mr. Chastain said that the appellant, "didn't make a move off the couch" and was "talking trash" to the officers. Mr. Chastain did not feel or smell any pepper spray in the house that night.

At the conclusion of the three (3) day jury trial, the appellant was convicted of vandalism of less than five hundred dollars ($500) and criminal attempt to commit resisting arrest. The trial court sentenced the appellant to thirty (30) days jail time and thirty (30) days probation on the criminal attempt to resist arrest charge and eleven (11) months twenty-nine (29) days on the vandalism of less than five hundred dollars ($500) charge, to be served concurrently. The trial court ordered that the sentences be served on probation after the appellant completed ten (10) days in jail. The appellant filed a timely motion for new trial, which was denied by the trial court. On appeal, the appellant challenges: (1) the trial court's denial of the motion to suppress; (2) the trial court's decision to instruct the jury on the offense of attempt to resist arrest; (3) the trial court's denial of the motion to dismiss; (4) the sufficiency of the evidence for vandalism; and (5) his sentence.

## Motion to Suppress

The appellant contends that the trial court erred by denying his motion to suppress the conduct observed by the officer who entered his home without a warrant. Specifically, the appellant argues that the officers had no probable cause to enter the home and that no one at the home consented to the officers' entry. The State argues that the record supports the trial court's decision.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23. Questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trial court as the trier of fact. Id. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" State v. Carter, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. See State v. Walton, 41 S.W.3d 775, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999). "The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In the case herein, the appellant filed a motion to suppress August 20, 2001, alleging that the officers had no search warrant and were thus "not legitimately on the premises" and that as a result of the "constitutionally invalid" "warrantless search," any and all observations and tangible items obtained as a result of the search should be suppressed.[2]

At the outset, we note that the record fails to include an order denying the appellant's motion to suppress. It is the duty of the appellant to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis of the appeal. Tenn. R. App. P. 24(b); State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). Generally, this court is precluded from addressing an issue on appeal when the record fails to include relevant documents. See Tenn. R. App. P. 24; State v. Bennett, 798 S.W.2d 783 (Tenn. Crim. App. 1990). Were we not able to discern that the trial court actually denied the motion to suppress and determine the factual basis for the trial court's denial of the motion from the transcript of the hearing on the motion to suppress it would be necessary to remand the case for completion of the record. However, the intent of the trial court is clear in the transcript. Accordingly, we will address the issue on the merits.

---

[2]It does not appear that any tangible evidence resulted from the search of the appellant's home in the case herein; however, under some circumstances, a Fourth Amendment violation may result in the testimony of live witnesses in regards to their observations. See e.g., U.S. v. Ceccolini, 98 S. Ct. 1054 (1978).

The Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures by law enforcement officers. A search conducted without a warrant is presumptively unreasonable and at a suppression hearing regarding such a search the State bears the burden of proving that the warrantless search was reasonable. State v. Coulter, 67 S.W.2d 3, 41 (Tenn. Crim. App. 2001). This means that the State must prove that the warrantless search or seizure was conducted pursuant to one of the narrowly-defined exceptions to the warrant requirement. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). The main exceptions to the requirement for a search warrant are: (1) consent to search; (2) a search incident to a lawful arrest; (3) probable cause to search with exigent circumstances; (4) in hot pursuit; (5) a stop and frisk situation; and (6) plain view. See State v. Bartram, 925 S.W.2d 227 (Tenn. 1996). "If the circumstances of a challenged search and seizure come within one of the recognized exceptions, the fruits of that search and seizure are not subject to operation of the exclusionary rule and may be properly admitted into evidence." State v. Shaw, 603 S.W.2d 741, 742-43 (Tenn. Crim. App. 1980). "Exigent circumstances are limited to three situations: (1) when officers are in 'hot pursuit' of a fleeing suspect; (2) when the suspect presents an immediate threat to the arresting officers or the public; or (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals." State v. Givens, No. M2001-00021-CCA-R3-CD, 2001 WL 1517033 (Tenn. Crim. App., at Nashville, Nov. 29, 2001), perm. app. denied (Tenn. May 6, 2002). The mere existence of these circumstances does not necessarily validate a warrantless search. The State is required to show that "the exigencies of the situation made the search imperative." State v. Yeargan, 958 S.W.2d 626, 635 (Tenn. 1997).

As stated above, our standard of review requires that the evidence preponderates against the trial court's findings of fact in this case. The trial court herein determined that:

> [T]he police were called to the residence where Ms. Chastain and [the appellant] were living. That she had called 911 complaining her live-in boyfriend had been drinking, yelling, and violent. The police came pursuant to that call answering a domestic violence - - what was perceived as a domestic violence call. She told them that [the appellant] was in the house. She again told the police that he was yelling and violent and that she heard something turned over. Ms. Chastain was a resident of the house. Ms. Chastain testified that they [the police] came up to the door and yelled out . . . [to the appellant] and then entered the house.
>
> I think under any way you view these facts, folks, that the police had probable cause to believe that criminal activity is afoot. If someone, even if they are in their own house, is yelling, drinking, and violent, and their live-in girlfriend calls the police, obviously she called the police because she was scared. She can tell me today that she called because she wanted them to talk to him. She wanted them to talk to him or take care of the problem because she was obviously scared - scared of domestic violence. It's a scourge on our society, and usually alcohol or drugs is at the root of the problem. Such was the case in this case. As I understand the facts, the police had

probable cause to believe that criminal activity was afoot[3] and had probable cause to believe and to enter the house to find the perpetrator of the alleged domestic violence and that anything - - as I understand the facts today, anything that they obtained during the entrance of the house to the living room is not suppressed accordingly. Therefore, the motion is denied.

In our view, probable cause and exigent circumstances were present to justify the warrantless entry of the appellant's residence. At the suppression hearing, Ms. Chastain testified that on the night in question, she was awakened by the appellant's yelling and throwing objects around the house. She suspected that he had been drinking, so she called 911, and was assured that police would be arriving shortly. When the police arrived, Ms. Chastain met them outside and informed them that the appellant was in the house. The officers walked up to the front door and yelled at the appellant through the front door, which was cracked open. Ms. Chastain saw the appellant throw something at one of the officers and saw the officers enter the house. Based on the phone call to 911 and the appellant's actions of throwing something at the officer, the police had reason to believe that the appellant presented an immediate threat to the arresting officers and to Ms. Chastain. The evidence does not preponderate against the decision of the trial court. This issue is without merit.

## Motion to Dismiss

The appellant argues on appeal that the trial court erred in denying the motion to dismiss based upon the State's alleged failure to properly preserve the videotape of the appellant's arrest. Specifically, the appellant contends that the videotape was somehow altered by the police and failed to include audio portions of his arrest that took place inside the house during which he claims he was sprayed with chemical spray. The appellant produced an expert witness at trial who testified that there were unexplained discrepancies on the tape as related to the time and date found in the on-screen display. The State disagrees.

The State does not have to preserve every single piece of evidence or information obtained during the course of a criminal investigation, but must preserve evidence "subject to discovery and inspection under Tennessee Rule of Criminal Procedure 16, or other applicable law." State v. Ferguson, 2 S.W.3d 912, 917 (Tenn. 1999) (footnote omitted). Evidence that is not apparently significant or exculpatory need not be preserved:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

---

[3]The trial court clarified that the criminal activity was "domestic violence" and that the appellant was inside Ms. Chastain's house "drunk, yelling, and violent."

-7-

Id. (quoting California v. Trombetta, 467 U.S. 479, 488-89 (1984)). Previously, this Court has held that "[t]he prosecution is not required to disclose information that the accused already possesses or is able to obtain." State v. Marshall, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992). If the State has failed in its duty, then the court must ascertain the effect of its failure, considering such factors as: (1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction. Ferguson, 2 S.W.3d at 917. In this analysis, "the central objective is to protect the defendant's right to a fundamentally fair trial." Id. If the court concludes, after consideration of all the factors, that a trial without the missing evidence would not be fundamentally fair, the court has the option of dismissing the charges against the defendant. Id.

The trial court herein determined that:

Considering the fact that your expert or what you are basing your motion on makes the statement that it is either severe neglect or that it has been tampered with, I have to take it in the light most favorable to the State. It may be neglect. It may be that they are not taking care of their tapes and dating it as they should, and again, that gives you all kinds of things to talk about to the jury. I know he goes on to make a conclusion based upon what he is speculating that the tape has been tampered with. However, during his recitation of what he finds, he makes the statement that it's either severe neglect or neglect and/or the tape has been tampered with, so what I have in front of me today, I'm not ready to dismiss the indictment. I think the State is stuck with the tape. They have told you it is the original. They're stuck with it. They can't come up with a brand spanking new one the day before that shows everything that is prejudicial to your client. As you said, the tape may be the best evidence you have. Considering what I understand the police will testify to based on what I heard at a previous motion in that regard, I'm going to deny your motion to dismiss.

Certainly, under Tennessee Rule of Criminal Procedure 16, the tape was discoverable. The State does not dispute the that the tape was discoverable or that the appellant was given the tape. Further, the evidence did not show that the State failed to preserve the tape. The State's attorney explained to the court that the tape was the original and that counsel for the appellant had actually been in possession of the tape for eighteen (18) months during the time prior to the appellant's trial. Although the on-screen display showing the date and time of the incident appear to be incorrect, there is no dispute that the tape shows the events that occurred during the appellant's arrest. The appellant presented expert testimony at trial, claiming that the videotape was not the original tape from the officer's car and that it had somehow been altered. The appellant himself testified that the officers sprayed him with "mace" in the house and took him down to the floor during the portion of the tape where the audio is missing. He claimed that he did not attempt to assault the officers when they wrestled him to the floor. The officers both testified that the appellant was not maced inside

the home and that the appellant resisted their arrest and attempted to assault them. Additionally, Mr. Chastain testified as a rebuttal witness, stating that he did not smell any chemical spray inside the home. Further, the police explained the missing audio portion by stating that it was possible that the officer's audio equipment suffered from a short in the wiring.

Utilizing the Ferguson factors, the evidence shows that while the State may have been negligent in its handling of the tape due to the incorrect date and time information on the tape, the appellant has not shown that there was significant evidence that was destroyed, when considered in light of the probative value and reliability of secondary or substitute evidence that was available. The jury heard the testimony of both the officers and the appellant as to the events taking place inside the house and was charged with the duty of assessing the credibility of those various witnesses. As evidenced by their verdict, the jury found the testimony of the officers to be credible. Lastly, the sufficiency of the other evidence used at trial to support the conviction was strong. Thus, the Ferguson factors do not weigh in favor of the appellant's argument that he received an unfair trial based on the State's handling of the evidence. The trial court properly denied the motion to dismiss. This issue is without merit.

Sufficiency of the Evidence

The appellant argues that the trial court erred by allowing the jury to consider the offense of vandalism where the evidence presented at trial was insufficient to support the offense. Specifically, the appellant argues that after he was sprayed with chemical spray and placed in the back of the patrol car, he could not breathe, and thus, he had "ample justification so as to make the destruction of the window a non-criminal act." The State argues that there was more than sufficient evidence to support the conviction.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning

the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Vandalism is defined as follows:

(a) any person who knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent is guilty of an offense under this section.

Tenn. Code Ann. § 39-14-408.

The evidence at trial shows that the appellant was placed in the back seat of Officer Higginbotham's patrol car. According to Officer Higginbotham, the car was running, the front driver's side and rear driver's side windows were partially rolled down and the air conditioner was running. The appellant was sprayed with chemical spray by the police officers in an attempt to subdue his actions. Officer Higginbotham stated that the spray did not seem to subdue the appellant because he continued talking and yelling after being sprayed. Several minutes later, the appellant kicked out the back window of the car. The appellant testified that he could not breathe inside the car. At the conclusion of the proof, the trial court charged the jury with the offense of vandalism as well as the defenses of intoxication and necessity. From the review of all of the evidence, including the videotape of the incident, the jury assessed the credibility of the witnesses and concluded that the appellant was guilty of vandalism. We determine that, from the evidence presented, a jury could reasonably conclude that the appellant committed the offense of vandalism. This issue is without merit.

<u>Attempt to Resist Arrest</u>

The appellant contends that the trial court erred in charging the jury with the lesser-included offense of attempt to resist arrest because such an offense does not exist. The State counters that the trial court was correct in instructing the jury because "the proof in this case is sufficient to warrant an instruction for attempt to resist arrest."

In Burns, the following test for determining whether an offense is a lesser-included offense of another was established by our supreme court:

An offense is a lesser-included offense if:
(a) all of its statutory elements are included within the statutory elements of the offense charged; or
(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
(1) a different mental state indicating a lesser kind of culpability; and/or

-10-

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Burns, 6 S.W.3d at 466-67. An instruction on a lesser-included offense must be given if the trial court, viewing the evidence most favorably to the existence of the lesser-included offense, concludes (a) that "evidence exists that reasonable minds could accept as to the lesser-included offense," and (b) that the evidence "is legally sufficient to support a conviction for the lesser-included offense." Burns, 6 S.W.3d at 469. The failure to instruct the jury on lesser-included offenses requires a reversal for a new trial unless a reviewing court determines that the error was harmless beyond a reasonable doubt. State v. Ely, 48 S.W.3d 710, 727 (Tenn. 2001). In making this determination, the reviewing court must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002).

In the case herein, the appellant was charged with resisting arrest. The crime of "resisting stop, frisk, halt, arrest or search" occurs when a person:

[I]ntentionally prevent[s] or obstruct[s] anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at such officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

Tenn. Code Ann. § 39-16-602(a). Force is defined as the "compulsion by the use of physical power or violence." Tenn. Code Ann. § 39-16-106(a)(12).[4]

At the conclusion of the proof, the trial court determined that it would charge the jury with resisting arrest and the lesser-included offense of "attempt to resist arrest." The trial court stated:

I'm going to leave attempt to commit to resist in there, because there are some times, you know, looking at the criminal attempt statute, that you could do something that you thought may have resulted in a resisting - - or an action that would have been

---

[4]Our supreme court has refused to equate "force" as required by Tennessee Code Annotated section 39-16-602(a) with "violence," stating that "compulsion by the use of physical power" may indeed be force but it need not be violence." See State v. Fitz, 19 S.W.3d 213, 217 (Tenn. 2000).

resisting arrest, but it actually didn't do it. I think its possible especially under the Burns test. The Burns test kind of opened the door wide open.

Tennessee Code Annotated section 39-12-101 defines the offense of criminal attempt as follows:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

Tenn. Code Ann. § 39-12-101.

Generally, there can be no attempt at crime which is itself in the nature of an attempt. State v. Jackson, 697 S.W.2d 366 (Tenn. 1985). In People v. Schmidt, 352 N.Y.S.2d 399 (N.Y. Crim. Ct. 1974), the defendant was charged among other things, with attempted resisting arrest. The court quoted the following language from People v. Jelke, 135 N.E.2d 213, 218 (N.Y.1956), in determining that attempted resisting arrest was not a crime:

If . . . the statutory definition of the essence of a crime is the attempt to do a certain act, the crime is committed regardless of whether or not the act is performed . . . So long as the statute defines the crime as consisting in the attempt, the crime is committed if the attempt is made, regardless of whether it is successful and even regardless of whether the objective would be criminal apart from the attempt . . . .

Schmidt, 352 N.Y.S.2d at 402. McKinney's Consolidated Laws of New York Annotated section 205.30 defines resisting arrest. "A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." N.Y. Penal Law § 205.30 (McKinney 2005). The New York statute is similar enough to the Tennessee statute to apply the analysis from Schmidt to the case herein. The crime of resisting arrest in Tennessee is completed when a person "prevents or obstructs" a law enforcement officer from "effecting a stop, frisk, halt, arrest or search." Tenn. Code Ann. § 39-16-602. As defined in Black's Law Dictionary, 6th edition, to "obstruct" is to "hinder or prevent from progress." While our definition of resisting arrest does not actually include the word "attempt" within its definition, the crime of resisting arrest is defined in the nature of an attempt, such that an

-12-

"attempt to resist arrest" would amount to an attempt to commit an attempt. The word "prevent" connotes a completed act such that the crime would be completed at the instant the law enforcement officer was actually "prevented" from effecting the arrest. On the other hand, if a person does not prevent, but obstructs, the crime is also completed. Therefore, it follows that if you attempt to prevent, but fail in doing so, you have obstructed a law enforcement officer from effecting an arrest. Thus, the crime of resisting arrest is complete once a defendant has attempted it. See State v. Russell, 10 S.W.3d 270 (Tenn. Crim. App. 1999) (holding that evidence was sufficient to sustain a conviction for resisting arrest where defendant hit the officer who was attempting to arrest defendant's brother even when preventing the arrest was unsuccessful). Similarly, this Court has determined that criminal attempt is not a lesser-included offense of felony evading arrest[5] because "if the criminal attempt statute is tacked onto the felony evading arrest statute, it would create the anomalous offense of an attempt to attempt to elude." State v. Frank Johnson, No. W2000-00386-CCA-R3-CD, 2001 WL 721082, at *8 (Tenn. Crim. App., at Jackson, June 26, 2001), pet. to rehear denied (Tenn. Crim. App. Oct. 22, 2001). In Johnson, the defendant was convicted by a jury of felony evading arrest in violation of Tennessee Code Annotated section 39-16-603(b). On appeal, the defendant argued that the trial court should have instructed the jury with the lesser-included offense of attempted evading arrest because he argued that he did not "intentionally flee or attempt to elude any law enforcement officer", but rather was "noncompliant or neglectful" in failing to stop when the officer attempted to pull him over. State v. Frank Johnson, 2001 WL 721082, at *6. This Court determined that the trial court did not err in failing to charge the jury with attempted evading arrest because "the statute already proscribes both flight and an attempt to elude, criminal attempt itself is not a lesser-included offense of evading arrest." Id. Likewise, we fail to see how there can be an attempt to resist arrest where the crime itself is defined as an attempt to do an act or accomplish a result. The trial court erred in charging the jury with this lesser-included offense. Accordingly, we reverse and dismiss the appellant's conviction for attempt to resist arrest.

## Sentencing

---

[5]Evading arrest is defined in Tennessee Code Annotated section 39-16-603 as follows:

(a)(1) Except as provided in subsection (b), it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person:

(A) Knows the officer is attempting to arrest the person; or
(B) Has been arrested.
(2) It is a defense to prosecution under this subsection (a) that the attempted arrest was unlawful.
(3) A violation of subsection (a) is a Class A misdemeanor.
(b)(1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop.
(2) It is a defense to prosecution under this subsection that the attempted arrest was unlawful.
(3) A violation of subsection (b) is a Class E felony unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony. . . .

Tenn. Code Ann. § 39-16-603.

Finally, the appellant argues that the trial court erred by ordering him to serve ten (10) days of his eleven (11) month, twenty-nine (29) day sentence in confinement. The State counters that the record supports the trial court's decision.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. § 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. See Tenn. Code Ann. § 40-35-302(b). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. See State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumptive sentence. See State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). In determining the percentage of the sentence to be served in actual confinement, the court must consider the principles of sentencing and the appropriate enhancement and mitigating factors, and the court must not impose such percentages arbitrarily. Tenn. Code Ann. § 40-35-302(d).

In the case herein, the trial court sentenced the appellant immediately following trial. In sentencing the appellant to serve ten (10) days of the eleven (11) month and twenty-nine (29) day sentence for vandalism in incarceration, the trial court commented:

Misdemeanor sentences are governed by Title 40 Chapter 35 of Tennessee Code Annotated just as felonies are. The defendant is - - stands before the court convicted of the offenses of Class A misdemeanor of vandalism under $500 and the Class C misdemeanor of attempt to resist arrest.

The court was here when - - and heard the circumstance and facts that surround the case. He also understands that misdemeanor sentences - - there's not presumptive sentences. However, the Court does look as guidance the enhances [sic] and mitigating factors as established in 40-35-113 and 114.

From a review of enhancement factors, the Court can find no enhancing factors under 40-35-114. The ones that look like they may apply are elements of the crime. The Court considers mitigating factors. The Court does not find - - and remember, the Court is looking at the vandalism count. The Court must also look at what precipitated the act of pushing out - - or the breaking out of the window. And the Court has no other alternative to find that grounds existed, even though it didn't establish a defense - - you know, [the appellant] was pepper sprayed, rightfully so in the Court's opinion, however, I think that mitigating factor would apply. I do not find that the conduct neither caused nor threatened serious bodily harm - - because obviously the violent thrashing about and the breaking out of the window can threaten serious bodily harm. I also specifically do not find that [the appellant] was suffering from a material physical condition that significantly reduced his culpability. I also find that considering [the appellant's ] attitude during the entire events of that evening do not constitute the mitigating factor of under such unusual circumstances, but is unlikely to sustain intent to violate the law motivating his conduct.

With that being said, the Court does find that under all of the facts and circumstances surrounding the offense, the lack of criminal history of [the appellant], under the actions that were exhibited that night, and his general attitude during the proceedings, that some incarceration is necessary to avoid depreciating the seriousness of this offense. However, I do think a suspended sentence is appropriate under these circumstances in a situation such as this - - used the word split sentence, but what I mean is I'm going to obviously sentence [the appellant] to 11 months and 29 days on the Class A misdemeanor offense . . . , but suspended after the service of ten days in the Coffee County Jail.

After reviewing the evidence, we cannot conclude that the trial court exceeded the "wide latitude of flexibility" afforded him in misdemeanor sentencing and that ordering the appellant to serve ten (10) days of the eleven (11) month and twenty-nine (29) day sentence in incarceration is consistent with the principles of the sentencing act.[6] This issue is without merit.

---

[6]The trial court also sentenced the appellant to thirty (30) days on the attempt to resist arrest conviction, but because we have reversed that conviction, it is unnecessary to discuss the propriety of that sentence.

-15-

## Conclusion

For the foregoing reasons, we reverse the appellant's conviction for attempted resisting arrest and remand the case to the trial court for any further proceedings which may be necessary. The appellant's conviction and sentence for vandalism are affirmed.

_____
JERRY L. SMITH, JUDGE