# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 20, 2009 Session

## STATE OF TENNESSEE v. NORMAN EUGENE BANKS

**Direct Appeal from the Circuit Court for Coffee County**
**No. 35,186     Charles Lee, Judge**

---

**No. M2008-01823-CCA-R3-CD - Filed July 26, 2010**

---

Defendant, Norman Eugene Banks, was indicted for initiation of a process intended to result in the manufacture of methamphetamine, a Class B felony, in count one of the indictment, and possession of drug paraphernalia, a Class A misdemeanor, in count two. Following a bench trial, the trial court as trier of fact found Defendant guilty of the lesser included offense of attempt to initiate of a process intended to result in the manufacture of methamphetamine, a Class C felony, and possession of drug paraphernalia. The trial court sentenced Defendant as a Range II, multiple offender, to eight years for his Class C felony conviction and eleven months, twenty-nine days for his misdemeanor conviction, to be served concurrently for an effective sentence of eight years. On appeal, Defendant argues that (1) the trial court erred in denying his motion to dismiss the indictment based on his assertion that the language in Tennessee Code Annotated section 39-17-435 is unconstitutionally vague and overbroad; (2) the statutory presumption created in Tennessee Code Annotated section 39-17-435 is unconstitutional; (3) the offense of attempt to initiate a process intended to result in the manufacture of methamphetamine is not a recognizable offense in Tennessee; and (4) the evidence is insufficient to support Defendant's conviction of possession of drug paraphernalia. After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

James H. Threet, III, Manchester, Tennessee, for the appellant, Norman Eugene Banks.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Charles Michael Layne, District Attorney General; and Jason M. Ponder, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Agent Lee Nettles testified at the bench trial that he has been a member of the 14th Judicial District Drug Task Force for approximately nine years, and that he is primarily involved in methamphetamine investigations. Agent Nettles said that he attended training sessions on the manufacture of methamphetamine at the United States Drug Enforcement Agency's ("DEA") Clandestine Laboratory School in Quantico, Virginia. Agent Nettles stated that he has also conducted seminars on methamphetamine use and manufacturing for the public as well as other police officers.

In 2006, Agent Nettles alerted various stores in Tullahoma about the ingredients necessary to manufacture methamphetamine and asked the businesses to note the license tag numbers of individuals who purchased a large quantity of any of the listed ingredients. On March 30, 2006, a grocery store contacted the Coffee County Communications Center after a male and a female had purchased a large quantity of match boxes and relayed the license tag number of the couple's vehicle.

Agent Nettles determined that the vehicle was registered in Defendant's name. Agent Nettles drove to Defendant's residence, and Defendant acknowledged that he had recently purchased matches at the grocery store. Defendant showed Agent Nettles the matches which were still in the back of Defendant's truck. Agent Nettles explained that the red phosphorus on the striker plate of the match boxes is a chemical used in the manufacture of methamphetamine, and methyl alcohol is used to extract the red phosphorus from the striker plate. A bottle of Heet antifreeze was also in the back of truck. Agent Nettles stated that one of the components of the antifreeze is methyl alcohol.

Defendant consented to a search of his property. Agent Nettles found two glass jars in the back of one of the trucks on the property. One jar was sealed with a cap. Based on his experience and training, Agent Nettles said that the substance in the jar was a combination of tincture of iodine, hydrogen peroxide, and an acid. Agent Nettles explained that the liquid form of iodine cannot be used to manufacture methamphetamine. Therefore, hydrogen peroxide and acid are mixed with the iodine to generate the formation of crystals which could be used in the manufacturing process. Agent Nettles testified that he observed crystals in the bottom of the sealed jar indicating that iodine, hydrogen peroxide, and acid had been combined in that jar.

The other jar was open with a funnel inserted into the neck of the jar and a coffee filter inside the funnel. Agent Nettles said that the filter showed traces of both iodine and

hydrogen peroxide, and an empty hydrogen peroxide bottle was also in the back of the truck.

Defendant unlocked the cab of his truck, and Agent Nettles found a gallon of muriatic acid, a gallon of iodine, and a pint of iodine. Agent Nettles found bottles of isopropyl alcohol, or rubbing alcohol, and hydrogen peroxide in Defendant's bathroom. Agent Nettles said that isopropyl alcohol can be used to extract red phosphorus from the striker plates of match boxes, and it also can be used to break down ephedrine pills into a usable form. In the kitchen, Agent Nettles found a bottle of lye which is used to raise the pH of cooked methamphetamine. Agent Nettles found another full can of Heet in the trunk of a vehicle, and three cans of Brake Kleen inside a box in a garbage can. Agent Nettles stated that Brake Kleen contains ether and can be used to extract methamphetamine oil from the lye. Also in the garbage can was an empty box of Histafed, a cold and allergy medicine containing pseudoephedrine, with a drug store bag. The label on the bag was dated March 27, 2006, or three days before the search of Defendant's property, and it listed Defendant as the purchaser of the medicine. Agent Nettles also found a two-liter bottle wrapped in black tape inside the garbage can and plastic tubing in the kitchen. Agent Nettles explained that these items can be used in the extraction process. Photographs of the items found during the search were introduced as exhibits at trial without objection.

On cross-examination, Agent Nettles acknowledged that he did not find any pills containing ephedrine or pseudoephedrine on Defendant's property, and there was no evidence that methamphetamine had been recently manufactured on the premises. Agent Nettles acknowledged that he did not submit the substances in either glass jar for analysis. Agent Nettles said that he followed DEA policy concerning the investigation and dismantling of potential methamphetamine labs. Accordingly, a hazardous materials team was called to the site and all substances which could be used in the production of methamphetamine, including the substances in the jars, were immediately destroyed.

Agent Nettles said that he spent approximately two hours conducting the search, and acknowledged that he did not wear protective clothing during this process. Agent Nettles said that he could have preserved a sample of the substances found in the two glass jars before the jars were destroyed because the contents of the jars were not dangerous. Agent Nettles said, however, that a sample was unnecessary because the Tennessee Bureau of Identification's laboratory did not analyze substances, only drugs. Moreover, Agent Nettles stated that he would not have allowed Defendant to take a sample from the glass jars for private analysis because DEA policy required the immediate destruction of the jars as part of a potential methamphetamine lab.

At the conclusion of the bench trial, the trial court, as trier of fact, found that the State did not prove beyond a reasonable doubt that Defendant had combined two substances that

could be used in the manufacture of methamphetamine and, therefore, found Defendant not guilty of the charged offense. *See* T.C.A. § 39-17-435(c). The trial court, however, found Defendant guilty beyond a reasonable doubt of the attempt to initiate a process intended to result in the manufacture of methamphetamine.

## II. Constitutionality of Tennessee Code Annotated section 39-17-435

Defendant argues that the trial court erred in not granting his motion to dismiss the indictment charging the methamphetamine offense against him. Defendant contends that the language of Tennessee Code Annotated section 39-17-435(c) is vague and overly broad and violates his due process rights because it does not put an individual on clear notice of what conduct is prohibited under the statute. The State argues first that Defendant has waived appellate review of this issue by failing to include it in his motion for new trial. Alternatively, the State contends that the statute in question is not unconstitutionally vague.

A motion for new trial was not required in this case because the trial was a bench trial. *See* Tenn. R. App. P. 3(e) (providing that prior to initiating an appeal as of right, defendants must file a motion for new trial "in all cases tried by a jury"); *McCormic v. Smith*, 650 S.W.2d 804, 806 (Tenn. 1983); *State v. Randy Lee Salyer*, No. E2008-01461-CCA-R3-CD, 2009 WL 1798381, at *2 (Tenn. Crim. App., at Knoxville, June 24, 2009), *no perm. to appeal filed*; *State v. Daryl Dewitt Godwin*, No. W2008-00346-CCA-R3-CD, 2008 WL 5070130, at *4 (Tenn. Crim. App., at Jackson, Dec. 2, 2008), *no perm. to appeal filed*.

In the case *sub judice*, however, defense counsel indicated to the trial court at the conclusion of the bench trial that he would file a motion for new trial in order to more fully develop his argument that the attempt to initiate a process intended to result in the manufacture of methamphetamine is not a lesser included offense of the initiation of a process. Thus, the motion for new trial focused only on the issue of whether the State had proved Defendant guilty of any offense based on the evidence presented at trial and did not raise any constitutional challenges. However, the filing of a motion for new trial in a bench trial is optional, and is not a "prerequisite to appellate review." *McCormic*, 650 S.W.2d at 806. In this case, Defendant filed a pre-trial motion to dismiss on the basis that the charging statute as stated in the indictment was unconstitutional, and the trial court denied his motion. *See* Tenn. R. Crim. P. 12(b); *State v. Rhoden*, 739 S.W.2d 6, 10 (Tenn. Crim. App. 1987) (concluding that the failure to raise a constitutional challenge to a statute in a pretrial motion will result in a waiver of the issue on appeal). Therefore, we will consider the merits of Defendant's issue.

In Tennessee, "[i]t is an offense for a person to knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine." T.C.A. § 39-17-435(a). The term "initiates" is defined to mean "to begin the extraction of an immediate

methamphetamine precursor from a commercial product, to begin the active modification of a commercial product for use in methamphetamine creation, or to heat or combine any substances that can be used in methamphetamine creation." *Id*. § 39-17-435(c). Defendant argues that an ordinary person would not know what conduct is prohibited because the statute does not define the terms, "any substance," "active modification," or "extraction." Moreover, Defendant submits that an "immediate methamphetamine precursor," is defined in terms so technical that an ordinary person cannot know what substances may subject him or her to criminal prosecution. *See* T.C.A. § 39-17-402(13) (defining an immediate methamphetamine precursor as "ephedrine, pseudoephedrine or phenylpropanolamine, or their salts, isomers, or salts of isomer, or any drug or other product that contains a detectable quantity of ephedrine, pseudoephedrine or phenylpropanolamine, or their salts, isomers or salts of isomers").

"Initially, our courts are charged with upholding the constitutionality of statutes where possible." *State v. Pickett*, 211 S.W.3d 696, 700 (Tenn. 2007) (citing *Dykes v. Hamilton County*, 183 Tenn. 71, 191 S.W.2d 155, 159 (1945); *State v. Joyner*, 759 S.W.2d 422, 425 (Tenn. Crim. App. 1987)). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." *Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003) (citing *State v. Robinson,* 29 S.W.3d 476, 479-80 (Tenn. 2000); *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997)). Moreover, this Court is required to "'indulge every presumption and resolve every doubt in favor of the statute's constitutionality.'" *Gallaher*, 104 S.W.3d at 459. (quoting *State v. Taylor,* 70 S.W.3d 717, 721 (Tenn. 2002)).

"Due process requires that a statute provide 'fair warning' and prohibits holding an individual criminally liable for conduct that a person of common intelligence would not have reasonably understood to be proscribed." *State v. Burkhart*, 58 S.W.3d 694, 697 (Tenn. 2001) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294 (1972)). Therefore, "[t]he constitutional test for vagueness is whether a statute's prohibitions are not clearly defined and are thus susceptible to different interpretations as to what conduct the statute actually proscribes." *State v. Whitehead*, 43 S.W.3d 921, 928 (Tenn. Crim. App. 2000) (citing *State v. Forbes*, 918 S.W.2d 431, 447-48 (Tenn. Crim. App.1995); *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294 *(1972); Baggett v. Bullitt*, 377 U.S. 360, 367, 84 S.Ct. 1316 (1964)).

General principles of statutory construction apply in reviewing the constitutionality of a particular statute. *State v. Partee*, 137 S.W.3d 25, 31 (Tenn. Crim. App. 2003). Therefore, a criminal statute "shall be construed according to the fair import of [its] terms" when determining if it is impermissibly vague. T.C.A. § 39-11-104. "The words of a statute are to be taken in their natural and ordinary sense without a forced construction to limit or

extend their meaning." *Whitehead*, 43 S.W.3d at 928 (citing *Ellenburg v. State*, 215 Tenn. 153, 384 S.W.2d 29, 30 (1964)).

The terms, "any substance," "active modification," and "extraction" are commonly used words capable of being understood by a person of ordinary intelligence. Although broad in a general sense, these terms are modified by the requirement that the extraction, modification, heating or combining of substances be done knowingly to result in the manufacture of methamphetamine. The statute clearly states that a person should not engage in one of the three statutorily delineated acts with knowledge that the acts will lead to the production of methamphetamine. Because the specific steps which comprise the initiation offense must be undertaken "knowingly," a person who inadvertently heats or mixes substances which are commonly used in the manufacture of methamphetamine, or purchases an over-the-counter drug containing a prohibited substance would not be guilty of a crime under the terms of the statute unless the state proved that the conduct was undertaken with the intent to initiate a process that would lead to the production of methamphetamine. *See Pickett*, 211 S.W.3d at 705 (observing that a person who inadvertently comes into possession of child pornography would not be guilty of the offense of possession of "material that includes a minor engaged in . . . [s]exual activity; or . . . [s]imulated sexual activity that is patently offensive" because such possession would not be "knowing").

Based on our review, we conclude that the statute clearly defines the prohibited conduct and is not susceptible to differing interpretations. Defendant is not entitled to relief on this issue.

### III. Constitutionality of the Statutory Presumption

Defendant also challenges, without citation to authority, the constitutionality of the presumption created in Tennessee Code Annotated section 39-17-435(d). This section provides, in part, that "a rebuttable presumption is created that any commercially sold product contains or contained the product that it is represented to contain on its packaging or labels." Officer Nettles testified at length, without objection, about the numerous items found during the search of Defendant's property, some of which were commercially labeled. During Officer Nettles' testimony, approximately fifteen photographs of commercially labeled products discovered on Defendant's property were introduced at trial, again without objection. In addition, the trial court briefly discussed the presumption in section 39-17-435(d) during closing argument without comment or objection by Defendant. Based on these factors, we conclude that Defendant has waived this issue for purposes of appellate review. Tenn. R. App. P. 36(a).

## IV. Attempt to Initiate

Relying on *State v. Adams*, 238 S.W.3d 313 (Tenn. Crim. App. 2005), Defendant argues that the offense of attempt to initiate a process intended to result in the manufacture of methamphetamine is not a lesser included offense of the initiation of a process. Defendant submits that the initiation offense itself is essentially an attempt to manufacture methamphetamine

As relevant to the case *sub judice*, "[a] person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3). In this regard, "[c]onduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense." *Id.* § 39-12-101(b).

Generally, however, there "can be no attempt at a crime which is itself in the nature of an attempt." *State v. Jackson*, 697 S.W.2d 366, 371 (Tenn. 1985). Thus, in *Adams*, we concluded that an attempt to resist arrest is not a lesser included offense of resisting arrest. *Adams*, 238 S.W.3d at 328. The offense of resisting arrest includes either the prevention or obstruction of a law enforcement officer from "effecting a stop, frisk, halt, arrest or search." *Id.* at 327 (quoting T.C.A. § 39-16-602). Thus, we stated,

> [w]hile our definition of resisting arrest does not actually include the word "attempt" within its definition, the crime of resisting arrest is defined in the nature of an attempt, such that an "attempt to resist arrest" would amount to an attempt to commit an attempt. The word "prevent" connotes a completed act such that the crime would be completed at the instant the law enforcement officer was actually "prevented" from effecting the arrest. On the other hand, if a person does not prevent, but obstructs, the crime is also completed.

*Id.* at 327; *see also State v. Frank Johnson*, No. W2000-00386-CCA-R3-CD, 2001 WL 721082, at *8 (Tenn. Crim. App., at Jackson, June 26, 2001), *perm. to appeal denied* (Tenn. Oct. 22, 2001) (concluding that because the offense of felony evading arrest includes both an intentional fleeing and the "attempt to elude" a law enforcement office, attempted felony evading arrest is not a lesser included offense of evading arrest).

In determining whether the attempt to initiate a process intended to result in the manufacture of methamphetamine "is or is not a crime, it is useful to consider whether there is a hypothetical factual scenario wherein one could commit attempted" initiation. *State v.*

*Paris*, 236 S.W.3d 173, 182 (Tenn. Crim. App. 2007). "Initiation" is defined as the commission of one of three specific acts: (1) the commencement of the extraction of an immediate methamphetamine precursor from a commercial product; (2) the commencement of the active modification of a commercial product for use in the creation of methamphetamine; or (3) the heating or combination of any substance or substances that can be used in the creation of methamphetamine. T.C.A. § 39-17-435(c). The offense is completed when one actually commences the process of either extraction, modification, heating, or combining.

As an example pertinent to the case *sub judice*, a person could purchase iodine, hydrogen peroxide and acid, and place the substances on a table along with a glass jar. The person can then insert a funnel into the neck of the jar and place a filter in the funnel. At this point, the person has not committed the offense of the initiation of a process intended to result in the manufacture of methamphetamine. He or she has, however, taken a substantial step toward committing the offense if the State proves that the person acted with the requisite knowing mental state, that is, knowingly taking the steps with the intent to create methamphetamine. Because the crime of initiation does not include every attempt to complete the crime, therefore, we conclude that the attempt to initiate a process intended to result in the manufacture of methamphetamine is an offense in Tennessee.

Turning to the present case, Agent Nettles provided expert testimony about the processes and substances used in the production of methamphetamine. The trial court found that Defendant's accumulation of a large quantity of match books, hydrogen peroxide, iodine, a funnel and filters, lye, isopropyl alcohol, Brake Kleen, Heet and the purchase of a medicine containing pseudoephedrine three days before the search was sufficient to support a finding that Defendant intended to initiate a process resulting in the manufacture of methamphetamine, and that he had taken a substantial step toward that end. *See Wyatt v. State*, 24 S.W.3d 319, 324 (Tenn. 2000) ("[T]he criminal attempt statute requires that the State prove two material elements: the culpability required for the attempted crime and an act or acts in furtherance of the attempted crime."). Based on our review, we conclude that Defendant is not entitled to relief on this issue.

## V. Possession of Drug Paraphernalia

Defendant argues that the evidence is insufficient to support his conviction of possession of drug paraphernalia. Defendant points out that Agent Lee did not find any methamphetamine residue or any ephedrine or pseudoephedrine on his property, and the commercial products which were discovered were scattered randomly over the property.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a

rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was convicted for possession of drug paraphernalia with intent to use it in violation of Tennessee Code Annotated section 39-17-425(a), which reads in relevant part as follows:

(a)(1) Except when used or possessed with the intent to use by a person authorized by this part and title 53, chapter 11, parts 3 and 4 to dispense, prescribe, manufacture or possess a controlled substance, it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this part.

The State thus has the burden of proving three elements beyond a reasonable doubt: (1) that Defendant possessed an object; (2) that the object possessed was classifiable as drug paraphernalia; and (3) that Defendant intended to use that object for at least one of the illicit purposes enumerated in the statute. *State v. Mallard*, 40 S.W.3d 473, 485 (Tenn. 2001). In determining whether a particular object is drug paraphernalia as defined by § 39-17-402, the court shall in addition to all other logically relevant factors consider the following:

(1) Statements by the owner or anyone in control of the object concerning its use;

(2) Prior convictions, if any, of the owner or of anyone in control of the object for violation of any state or federal law relating to controlled substances;

(3) The existence of any residue of controlled substances on the object;

(4) Instructions, oral or written, provided with the object concerning its use;

(5) Descriptive materials accompanying the object which explain or depict its use;

(6) The manner in which the object is displayed for sale;

(7) The existence and scope of legitimate uses for the object in the community;

and

8) Expert testimony concerning its use.

*Id*. § 39-17-424.

Agent Nettles testified that he found iodine, hydrogen peroxide, lye, Brake Kleen, Heet, a substantial number of match boxes containing red phosphorous, a funnel, coffee filters, plastic tubing, and a two-liter bottle wrapped with black tape that is used as a "gasser" during a search of Defendant's property. Although no ephedrine of pseudoephedrine was found on the premises, Agent Nettles discovered an empty box originally containing twenty-four pills of Histafed. The prescription bottle was issued in Defendant's name on March 27, 2006, three days before the search. Agent Nettles testified that Histafed contains pseudoephedrine, an immediate precursor of methamphetamine, and that each of the products found on Defendant's property were a necessary component in the manufacture of methamphetamine. Based on the foregoing, we conclude that the trial court, as trier in fact, could find beyond a reasonable doubt that Defendant was in possession of drug paraphernalia for use in the manufacture of methamphetamine. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-10-