# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 5, 2014

## STATE OF TENNESSEE v. FREDERIC A. CROSBY

**Appeal from the Circuit Court for Weakley County**
**No. 2013-CR8     William B. Acree, Jr., Judge**

---

**No. W2013-02610-CCA-R3-CD  - Filed September 9, 2014**

---

Appellant, Frederic A. Crosby, stands convicted of possession of 0.5 grams or more of cocaine with the intent to deliver, a Class B felony, and simple possession of marijuana, a Class A misdemeanor.  The trial court sentenced appellant to twelve years for his cocaine conviction and eleven months, twenty-nine days for his marijuana conviction, to be served concurrently.  On appeal, appellant argues that: (1) the trial court erred by failing to grant his motion to suppress because the arresting officer did not have probable cause to search him; (2) that the evidence was insufficient to support his conviction for possession of 0.5 grams or more of cocaine with the intent to deliver; and (3) that the trial court erred by imposing the maximum sentence within appellant's sentencing range for his conviction for possession of 0.5 grams or more of cocaine with the intent to deliver.  Following our review of the briefs, the record, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Joseph P. Atnip, District Public Defender (on appeal), Dresden, Tennessee; and James T. Powell (at trial), Union City, Tennessee, for the appellant, Frederic A. Crosby.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Thomas A. Thomas, District Attorney General; and Kevin McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case concerns the discovery of marijuana and cocaine in the possession of appellant after the police responded to a call involving a verbal altercation between appellant

and another individual. Appellant was indicted on two counts of possession of 0.5 grams or more of cocaine with the intent to deliver and two counts of simple possession of marijuana based on two incidents occurring on November 16 and 21, 2012. However, following the State's case-in-chief in which it presented no evidence regarding the November 21, 2012 incident, the State moved to dismiss the two counts of the indictment relating to the November 21 incident, which was granted. Therefore, the evidence at trial only pertained to one count of possession of 0.5 grams or more of cocaine with the intent to deliver and one count of simple possession of marijuana. Appellant's trial began on September 18, 2013, and he was convicted as charged.

## I. Facts

### A. Facts from the Motion to Suppress Hearing

The trial court held a suppression hearing on April 4, 2013. Officer Patrick Dilday, a police officer with the Martin Police Department, testified that he responded to a call reporting a domestic disturbance at 9:39 p.m. on November 16, 2012. After arriving, Officer Dilday observed appellant and a woman arguing in a parking lot on North Lindell Street, so he and another officer separated the two individuals. Officer Dilday explained that when he began speaking with appellant, he smelled the odor of marijuana emanating from appellant's person. Officer Dilday then asked appellant if he had any marijuana. Appellant responded that he did not but that he had been around other people who had been smoking marijuana. Officer Dilday explained that he then searched appellant's pockets and found a marijuana cigarette in appellant's right pants pocket and more marijuana in appellant's jacket pocket. Officer Dilday arrested appellant and transported appellant in Officer Dilday's patrol car to the police department for booking. After completing the booking procedures, the officers released appellant with a citation, and Officer Dilday went back to his patrol car. Officer Dilday found 5.5 grams of crack cocaine in the seat where appellant had been sitting. Officer Dilday explained that he searches his patrol car before his shift begins and after each transport. Officer Dilday informed his sergeant of the discovery, took pictures of the cocaine before moving it, and filed warrants for appellant's arrest.

During cross-examination, Officer Dilday stated that when he initially separated appellant from the woman, he did not have probable cause to arrest appellant but that appellant was not free to leave because the officers were investigating the domestic disturbance. Officer Dilday explained that while speaking with appellant, he smelled fresh marijuana, rather than burned marijuana. Officer Dilday affirmed that he searched appellant immediately after appellant stated that he had been around other people who had been smoking marijuana, based on the smell of marijuana. He recognized the smell of marijuana from his training and experience. Officer Dilday confirmed that he was not concerned about

appellant's having a weapon and that he did not feel he was in danger. Officer Dilday stated that he searched appellant even though he had no proof that appellant's assertion that he had been around other people smoking marijuana was incorrect. Officer Dilday explained that he had been working as an officer for approximately four months prior to appellant's arrest and that although he could not remember the exact number, he had made prior marijuana-related arrests. Officer Dilday also stated that his wife was riding with him on the night of appellant's arrest, which was permitted by the police department. Officer Dilday testified that he searched appellant thoroughly before placing him in the patrol car. Appellant was handcuffed while in the patrol car. Officer Dilday was inside the police station during appellant's booking, which took thirty-five to forty-five minutes, and searched his patrol car immediately thereafter. The car was locked while Officer Dilday was inside. Officer Dilday conceded that while at the police academy, he was not taught to detect the smell of raw marijuana; however, he explained that he had "assisted [the police department's] canine officer, Carl Jackson, [while] training [Officer Jackson's] dog" and that he had participated in "several" cases where there were arrests for possession of drug paraphernalia and marijuana, although he could not remember the exact number of prior arrests.

Investigator Eric Smith testified next that he worked for the Weakley County Sheriff's Department and that he had worked in law enforcement for approximately thirteen years. Investigator Smith explained that he had made undercover drug purchases and drug arrests and that he was familiar with the smell of marijuana. Investigator Smith asserted that raw marijuana emitted an odor, even in small amounts. He described it, saying, "Marijuana gives off an extreme odor. I mean, there's no other smell like it. . . . But, yes, the smallest amount of marijuana does give off a very strong odor." Investigator Smith asserted that even if an individual had a gram or two of marijuana in a coat pocket, an officer could still smell it.

During cross-examination, Investigator Smith testified that based on his experience, if a person had marijuana in a small bag in a pocket, "most of the time" he would be able to smell the marijuana. However, Investigator Smith conceded that he was not present when appellant was arrested.

Defense counsel recalled Officer Dilday, who testified that the marijuana he found in appellant's jacket pocket was in a cellophane plastic bag that was twisted and tied closed.

The trial court took the matter under advisement and continued the case until April 18, 2013, at which time the trial court stated:

> I think, under all the circumstances, the Court finds as a matter of fact that the officer could smell the marijuana. I think he had the right, under the circumstances [of] there being a domestic disturbance, to go on with

questioning the defendant, and after smelling the marijuana, he had the right to search him for drugs, the probable cause having been established. Therefore, the motion is denied.

## B. Facts from Trial

The State's first witness was Michael Wenz, a sergeant with the Martin Police Department. Sergeant Wenz explained that on November 16, 2012, he met appellant after he was flagged down by Robin Jones due to a verbal altercation that was occurring between Ms. Jones and appellant. Officer Patrick Dilday arrived to help Sergeant Wenz. Sergeant Wenz explained that he spoke to Ms. Jones while Officer Dilday talked to appellant.

Officer Dilday's trial testimony was substantially similar to his testimony at the motion to suppress hearing. However, Officer Dilday further explained that the Martin Police Department's policy regarding marijuana arrests with a small amount of marijuana was to arrest the offender, transport them to the police department, issue a criminal summons, write an incident report, tag any evidence, fingerprint the arrestee, and then release the individual. Officer Dilday agreed that the arrestee would not be given a bond and would not be placed in jail. Therefore, Officer Dilday arrested appellant and took him to the police station. Officer Dilday handcuffed appellant and performed a weapons search of appellant's person prior to placing him in the patrol car. Officer Dilday further elaborated that at the time of this incident, he left his car at the police station at night. He stated that the proper procedure regarding his patrol car at the beginning of each shift was to search the entire car, "the back seat, the front seats, just do a thorough check of [his] car before each shift" to ensure there was nothing in the car. Officer Dilday affirmed that on the day of appellant's arrest, he checked his car prior to beginning his shift and stated that no one else had been in the back of his car prior to appellant's arrest. Officer Dilday then explained that after each transport and before going back on patrol, he checked his patrol car to "make sure nothing was left in the back that may belong to any person that [he] may transport." Officer Dilday testified that when he arrived at the police station with appellant, he took appellant out of the car, shut and locked the doors of the car, and walked appellant inside. Following the booking procedures and during the post-transport search, Officer Dilday found a bag of cocaine next to the seat belt buckle where appellant had been sitting.

During cross-examination, Officer Dilday testified that his wife rode with him on the night in question and that she sat in the front passenger seat. When they arrived at the police department with appellant, she exited the car and entered the station before he locked the car. Officer Dilday explained that there was a solid metal divider between the front and back seats in his patrol car and that there was a window that could be opened. Officer Dilday testified that prior to placing appellant in the car, he searched all of appellant's pockets and patted

down appellant's arms, legs, and torso. Officer Dilday explained that there was a video taken by a camera in his car and that the video did not show appellant placing anything in the seat. Officer Dilday conceded that after he found the marijuana, he never saw appellant acting in a suspicious manner to indicate that he was in possession of more drugs, such as trying to conceal things under his clothing or making unusual movements in the police car.

During redirect examination, Officer Dilday clarified that the video recording of appellant while inside the police car did not show the bottom of the backseat where appellant's hands were. The video only showed the area from the arrestee's mid-stomach and above. He also testified that based on his initial search, appellant could have still had drugs on his person when he was placed in the patrol car. Officer Dilday explained that crack cocaine is normally sold for approximately $100 per gram on the street.

During recross-examination, Officer Dilday agreed that he did not fingerprint any of the evidence found on appellant. Officer Dilday conceded that there was a set of keys to his patrol car on a board in the police department to which other officers had access.

Lela Jackson, a scientist in the Forensic Services Division of the Tennessee Bureau of Investigation ("TBI"), identified the two exhibits containing the seized contraband and testified that she had performed an analysis of each package. She explained that one package contained 1.48 grams of marijuana and that the other package held 5.55 grams of cocaine base.

The State moved to dismiss the two counts of the indictment relating to incidents on November 21, 2012, which was granted, leaving only one count of possession of 0.5 grams or more of cocaine with the intent to deliver and one count of simple possession of marijuana. The State then rested its case-in-chief. Appellant presented no additional evidence.

After hearing the evidence, being charged by the court, and deliberations, the jury convicted appellant as charged.

## C. Facts from Sentencing

At appellant's October 31, 2013 sentencing hearing, Kevin Sandefer, a probation and parole officer, testified that when he prepared appellant's investigation report, he found one prior felony and several misdemeanor charges. Appellant had also admitted, in a questionnaire used to develop the investigation report, to using marijuana since age nine, to using cocaine since age sixteen, and to using crack cocaine since age eighteen. Appellant used drugs daily if they were available.

Appellant testified next and admitted that he had been using marijuana, cocaine, or crack cocaine on a daily basis, if it was available, for twelve to thirteen years. Appellant agreed that he was amenable to participation in a drug rehabilitation program to assist with his drug addiction. Appellant stated that he was twenty-nine years old and that the last time he had steady employment was in 2009. Appellant explained that since 2009, he had worked at an "under-the-table job" for $10 an hour whenever he was needed.

After hearing this evidence, the trial court sentenced appellant to twelve years for appellant's cocaine conviction and eleven months, twenty-nine days for appellant's marijuana conviction, to be served concurrently. In determining length and manner of this sentence, the trial court summarized the facts from trial; reviewed Tennessee Code Annotated section 40-35-102, which states the underlying principles of sentencing; determined that the sale and use of drugs was a "tremendous problem" in that jurisdiction; and found that it was "apparent" that appellant was in the "drug business for the purpose of profiting" from it. The trial court found significant the substantial amount of drugs found on appellant and that appellant had not been gainfully employed since 2009. The court stated, "The Court strongly suspects that [appellant]'s main source of income would have been through some illegal drug activities." However, he stated that even if true, "that would not affect that sentence that [the court was] going to impose upon him."

The court found that appellant had a long history of criminal conduct — thirteen prior misdemeanor charges (which included driving offenses, evading arrest, vandalism, domestic violence, assault, reckless endangerment, possession of marijuana, disorderly conduct, and attempted sexual battery) and one prior felony conviction for aggravated assault. The court stated, "In short, for most of [appellant]'s adult life, he's been engaged in a life of crime." In consideration of Tennessee Code Annotated section 40-35-103, which states that a consideration of sentencing is whether measures less restrictive than confinement have been successful for the defendant in the past, the trial court determined that probation had been ineffective for appellant in the past, that there was a need for deterrence in this case, and that confinement was necessary to avoid depreciating the seriousness of the offense. The court considered the mitigating factors and found that none applied. The court also found that the enhancement factor that appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range applied to appellant's sentence.

Finally, the court stated:

Considering all the principles that I've just announced in this case, [appellant], considering the evidence that's been presented in the case both at your -- at the trial and today, considering the statements that you've made,

considering your lack of remorse for this crime, considering your lack of work history, considering your prior criminal record, considering the principles of sentencing and the guidelines established by the state legislature, the Court finds -- the range of punishment is 8 years to 12 years. The Court finds that a sentence of 12 years in the Department of Corrections is appropriate in this case.

The trial court also sentenced appellant to eleven months, twenty-nine days for his marijuana conviction.

## II. Analysis

Appellant now argues that the trial court erred by failing to grant his motion to suppress because the arresting officer did not have probable cause to search appellant, that the evidence was insufficient to support his conviction for possession of 0.5 grams or more of cocaine with the intent to deliver, and that the trial court erred by imposing the maximum sentence within appellant's sentencing range for his conviction for possession of 0.5 grams or more of cocaine with the intent to deliver.

### A. Motion to Suppress

Appellant argues that the trial court should have granted his motion to suppress because the arresting officer did not have probable cause to search appellant. The State responds that the search was supported by probable cause.

A trial court's findings of fact at a hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). As the trier of fact, the trial court is in a better position to assess the witnesses' credibility, determine the weight of the evidence and the value to be afforded it, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. However, the trial court's conclusions of law are not binding on this court. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002) (citing *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998)). Further, the trial court's applications of law to the facts are questions of law that we review de novo. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000) (citations omitted). On appeal, the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn therefrom. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The appellant bears the burden of establishing that the evidence contained in the record preponderates against the trial court's findings of fact. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975) (citation omitted).

Because neither party directly contests whether the police had reasonable suspicion to conduct an investigatory stop and, instead, focus their arguments strictly on whether there was probable cause to search appellant, we will confine our analysis to the propriety of the officer's search.

At a hearing on a motion to suppress evidence recovered as a result of a warrantless search, the State must prove that the search was reasonable. *State v. Coulter*, 67 S.W.3d 3, 41 (Tenn. Crim. App. 2001). To carry its burden, the State must prove that law enforcement conducted the warrantless search or seizure pursuant to one of the narrowly-defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). Our supreme court has held:

> [U]nder both the federal constitution and our state constitution, a search without a warrant is presumptively unreasonable, and any evidence obtained pursuant to such a search is subject to suppression unless the [S]tate demonstrates that the search was conducted under one of the narrowly defined exceptions to the warrant requirement. Moreover, Tennessee has approved of and adopted exceptions to the requirement of obtaining a valid search warrant, including search incident to arrest, plain view, stop and frisk, hot pursuit, search under exigent circumstances, and others.

*State v. Cox,* 171 S.W.3d 174, 179 (Tenn. 2005) (citations omitted); see *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012). Pursuant to the exigent circumstances exception, a warrantless search may be conducted where there are exigent circumstances and probable cause. *Fuqua v. Armour*, 543 S.W.2d 64, 68 (Tenn. 1976); *State v. Adams*, 238 S.W.3d 313, 321 (Tenn. Crim. App. 2005). "Exigent circumstances are limited to three situations: (1) when officers are in 'hot pursuit' of a fleeing suspect; (2) when the suspect presents an immediate threat to the arresting officers or the public; or (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals." *Adams*, 238 S.W.3d at 321 (quoting *State v. Steven Lloyd Givens*, No. M2001-00021-CCA-R3-CD, 2001 WL 1517033 (Tenn. Crim. App. Nov. 29, 2001)) (internal quotation marks omitted). "Given the importance of the warrant requirement in safeguarding against unreasonable searches and seizures, a circumstance will be sufficiently exigent only where the State has shown that the search is imperative." *State v. Meeks*, 262 S.W.3d 710, 723 (Tenn. 2008) (citations omitted). "No amount of probable cause can justify a warrantless search or seizure, absent 'exigent circumstances.'" *Fuqua*, 543 S.W.2d at 68 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971)) (internal quotation marks omitted).

Therefore, the decisive determinations here are whether there was probable cause and exigent circumstances to search appellant after Officer Dilday smelled marijuana on

appellant's person. "Probable cause generally requires reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." *State v. Williams*, 193 S.W.3d 502, 507 (Tenn. 2006). "'Probable cause must be more than a mere suspicion.'" *Echols*, 382 S.W.3d at 278 (quoting *State v. Lawrence*, 154 S.W.3d 71, 76 (Tenn. 2005)). However, "probable cause 'deal[s] with probabilities[,] . . . not technical[ities,] . . . the factual and practical considerations of everyday life on which reasonable and prudent [persons] . . . act.'" *Id.* (quoting *State v. Day*, 263 S.W.3d 891, 902 (Tenn. 2008)); *see Brinegar v. United States*, 338 U.S. 160, 175 (1949).

Appellant argues that there was no probable cause to search him based solely on Officer Dilday's detection of the odor of raw marijuana. Specifically, appellant distinguishes the case law regarding officers' smelling marijuana by arguing that when officers smell a "strong" or "intense" odor of marijuana, there is probable cause but that when officers smell only a faint smell of marijuana, the evidence must be corroborated by another officer before probable cause to search is established. We refuse to make such a distinction. Appellant's argument essentially rises and falls on the credibility of Officer Dilday regarding his detection of the odor of marijuana. However, as the trier of fact at a suppression hearing, the trial court is in a better position to assess the witness's credibility, determine the weight of the evidence and the value to be afforded it, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. Officer Dilday testified that based on his training with a canine drug detection dog and his experience in prior arrests, he recognized the smell of raw marijuana on appellant's person. The trial court credited this testimony and found that the officer could smell the marijuana. We will not disturb that credibility finding on appeal.

Regarding whether the smell of marijuana alone can establish probable cause, our case law reflects that it can. This court's cases regarding the smell of marijuana during a traffic stop of a vehicle are instructive on this issue. In *Hicks v. State*, this court stated:

> Since the officer's actions, prior to the time he smelled the odor of the contraband marijuana, were permissible, the smell of marijuana established probable cause to believe that a crime other than the traffic violation had been committed. The detection of the odor of marijuana was sufficient to allow the subsequent warrantless search of the automobile.

534 S.W.2d 872, 874 (Tenn. Crim. App. 1975) (citations omitted). Our supreme court has also stated that the smell of marijuana was sufficient to establish probable cause, stating:

> The officer who testified that he smelled the odor of marijuana coming from the vehicle when [defendant] lowered the window also testified that by reason of his training and experience he was able to detect and identify the distinctive

odor of marijuana.  In our opinion, this constituted probable cause to believe that the vehicle contained contraband marijuana.

*State v. Hughes*, 544 S.W.2d 99, 101 (Tenn. 1976).  While these cases factually address the search of a car rather than a person, we determine that there is no distinguishable practical difference for purposes of this case.  Whether the odor was emitting from the inside of a car or from a jacket pocket, marijuana is an illegal substance that emits a distinctive odor. Furthermore, this court in *State v. James C. Leveye*, determined that the smell of marijuana on a person was sufficient to establish probable cause to search.  No. M2003-02543-CCA-R3-CD, 2005 WL 366892, at *3 (Tenn. Crim. App. Feb. 16, 2005); *see State v. Reginald Allan Gillespie*, No. 03C01-9706-CR-00222, 1999 WL 391560, at *3 (Tenn. Crim. App. June 16, 1999) (finding probable cause to search a person after officer smelled marijuana and observed smoke lingering about appellant's person).  Therefore, given our case law, Officer Dilday's testimony, and the trial court's credibility determinations, we determine that there was probable cause for Officer Dilday to search appellant's person for marijuana.

However, even with probable cause, there must still have been exigent circumstances to justify this warrantless search.  Our court in *State v. Gillespie* stated that after a probable cause determination that an individual standing on a sidewalk possessed contraband, exigent circumstances were present because:

> [The officer] was confronted with the possibility that the appellant might flee from his presence.  Additionally, . . . the appellant had the ability to dispose of the drugs, even in the presence of the officers.  In our view, to have failed to search under such circumstances would have meant risking loss of the contraband.  Thus, we conclude that there were exigent circumstances which justified the warrantless search of the appellant's person.

*Gillespie*, 1999 WL 391560, at *3; *Leveye*, 2005 WL 366892, at *3.  Similarly, we determine that there were exigent circumstances here.  Officer Dilday had already asked appellant about the origins of the odor of marijuana, alerting appellant to the issue of drug detection.  Officer Dilday could not have left appellant to get a warrant or detained appellant while another officer obtained a warrant to search appellant without risking an escape attempt or possible destruction of evidence.  Therefore, we determine that there were exigent circumstances to search here.

Having determined that there was probable cause and that there were exigent circumstances, we conclude that the search was reasonable and that the trial court did not err by denying appellant's motion to suppress.  Appellant is without relief as to this issue.

## B. Sufficiency of the Evidence

Appellant next argues that the evidence was insufficient to support his conviction for possession of 0.5 grams or more of cocaine with the intent to deliver. Specifically, appellant argues that someone else could have put the cocaine in the back seat of the patrol car. He argues that Officer Dilday's wife, who was riding in the car with Officer Dilday on the day of appellant's arrest, had some access to the car and that there was a spare set of keys in the police station to which others officers had access during the time in which appellant was being booked. Furthermore, nothing in the police car's video revealed appellant acting suspiciously during his transport to the police department. Appellant argues that based on this evidence, no reasonable jury could have found him guilty beyond a reasonable doubt.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant,

who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain a conviction for possession 0.5 grams or more of cocaine with intent to deliver, the State must prove beyond a reasonable doubt that appellant knowingly "[p]ossess[ed] a controlled substance with intent to . . . deliver . . . the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). In that regard, possession of cocaine "is a Class B felony if the amount involved is point five (.5) grams or more." *Id.* § 39-17-417(b)(1). Possession may be actual or constructive and may be proven with circumstantial evidence. *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing Tenn. Code Ann. § 39-17-419; *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001)).

Viewed in the light most favorable to the State, the evidence established that: (1) appellant was arrested for simple possession of marijuana and transported to jail in a patrol car; (2) appellant was sitting in the back seat of the police car in the same place were the cocaine was found; (3) Officer Dilday searched this patrol car before beginning his shift and found no drugs of any kind prior to transporting the defendant to jail; (4) Officer Dilday shut and locked the car doors after he, his wife, and appellant exited the car at the police station; and (5) crack cocaine weighing 5.5 grams was found in the patrol car after appellant had completed the booking procedures. This information was sufficient for a reasonable jury to find beyond a reasonable doubt that appellant possessed the cocaine with intent to deliver.

While Officer Dilday's wife had some access to the car and there was a spare set of keys to the patrol car inside the police department, whether the drugs were placed in the car by appellant or another individual is an issue of fact. In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *Bland*, 958 S.W.2d at 659; *Pruett*, 788 S.W.2d at 561. The jury heard testimony regarding Officer Dilday's search of his car and the individuals who had access to the car at trial, and the jury resolved the issue of fact in the State's favor. We will not disturb this factual finding on appeal. This issue is without merit, and appellant is not entitled to relief.

## C. Sentencing

Appellant also argues that the trial court erred by imposing the maximum sentence within appellant's sentencing range for his conviction for possession of 0.5 grams or more of cocaine with the intent to deliver. In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct

involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id*. § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

A trial court should base its decision regarding confinement on the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Id.* at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Appellant does not challenge the trial court's application of the enhancement factor that appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Appellant only argues that the trial court erred in sentencing appellant to the maximum sentence within his range based solely on the application of one enhancement factor.

Appellant's conviction for possession 0.5 grams or more of cocaine with intent to deliver was a Class B felony. *See* Tenn. Code Ann. § 39-17-417(a)(4), (b)(1). Because appellant was a Range I offender, his sentencing range was between eight and twelve years. *See Id*. § 40-35-112(a)(2). Therefore, appellant's sentence was an in-range sentence. Furthermore, the trial court considered the principles of sentencing, the evidence presented at trial and at the sentencing hearing, appellant's lack of remorse, appellant's work history, and appellant's criminal record. On appeal, the trial court's sentencing determination is reviewed under an abuse of discretion standard and afforded a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Based on the trial court's considerations and the within-range sentence, we determine that the trial court did not abuse its discretion in sentencing appellant to the maximum sentence within his sentencing range. Appellant is without relief as to this issue.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE